PEARL SALSCHEIDER v. WALTER HOLMES AND ANOTHER.[1]

June 16, 1939.

No. 32,034.

[1]Reported in 286 N. W. 347.

 

*Kerr & O'Neill,* for appellant.

*Kyle & Kyle* and *R. Paul Sharood,* for respondent Charles Evans, administrator.

HOLT, JUSTICE.

Suit by the executor of the estate of Anna Gibson to recover of defendant Holmes money and property of said Anna Gibson in his hands at the time of her death. The administrator of the estate of Christina Schlick, a sister or half sister of Anna Gibson, who died subsequent to Anna, is also made a defendant because of a claim to the same property. There appears to be no substantial dispute concerning the situation. Mr. Holmes, connected with a St. Paul corporation in whose employ Harry Gibson, the husband of Anna Gibson, had been for years, had known Mr. Gibson for over 50 years and Mrs. Gibson for upward of 30 years. He was a trusted friend of the Gibsons, whose help and advice they sought in business matters. They were elderly people with no children. Mrs. Schlick lived in Cleveland and was the only relative in whom they were interested. Mr. Gibson appears to have been stricken with an incurable malady about 1934, and Mrs. Gibson was not in good health. In the summer of 1935 they entered Bethesda Invalid Home, St. Paul. Mr. Gibson died July 13, 1936. Soon thereafter Mrs. Gibson went to live with plaintiff, Mrs. Salscheider, and remained there until her death, which occurred July 20, 1937. About two weeks after coming to Mrs. Salscheider's home Mrs. Gibson made her will in favor of Mrs. Salscheider.

While at the Bethesda Home Mr. Gibson asked Mr. Holmes to take over the property when he should pass away, pay his funeral expenses, and handle whatever there was left for the support and care of Mrs. Gibson, and after her death and payment of her debts and burial expenses deliver what remained to Mrs. Schlick. This Mr. Holmes agreed to do. When Mr. Gibson died Mrs. Gibson placed about $3,300 in cash or its equivalent in Mr. Holmes' hands. Most of this, perhaps, was from life insurance payable to Mrs. Gib-

son. It was accepted upon the oral agreement that he was to hold and invest the amount, pay therefrom what Mrs. Gibson needed for her support and care during her life, and, upon her death, after the payment of her debts and funeral expenses, turn over and deliver the remainder to Mrs. Schlick. Mr. Holmes, during Mrs. Gibson's life, faithfully performed the agreement. Each month $25 was paid for her board, room, and care, and $10 was received by her for spending money. At the time this action was brought there remained $2,244.26 of the funds Mr. Holmes had received; but, because of the suit, he has not as yet paid Mrs. Gibson's funeral expenses.

Plaintiff contends that the $2,244.26 is part of Mrs. Gibson's estate and passed by her will. Defendant Holmes claims to hold the same merely as trustee of an express trust; and defendant Evans lays claim thereto as the representative of Christina Schlick's estate. There is no dispute as to the actual facts. The legal questions presented are grouped under four propositions by plaintiff: (a) Was Holmes a competent witness? (b) If competent, did the transaction proved effect a transfer of the legal title from Mrs. Gibson so as to constitute an irrevocable trust? (c) Can an oral trust in personalty be created under our statutes? (d) Was the evidence so clear and satisfactory that the court could find that a valid oral trust had been created?

It is claimed the court erred in permitting Holmes, a party to the action, to testify to conversations with persons now deceased, contrary to 2 Mason Minn. St. 1927, § 9817. It is asserted that not only was Holmes a party to the action and interested in the event thereof, but that the conversations with Mr. and Mrs. Gibson, to which he was permitted to testify, related to matters at issue between plaintiff and defendant Evans, the representative of the estate of Mrs. Schlick. It is questionable whether plaintiff is in position to claim prejudice because of the admission of Mr. Holmes' testimony. Mrs. Yould testified as to the existence of the trust, and it was stipulated that Mrs. Gibson's attending physician and her pastor, if called, would testify that her property had been placed in the hands of Mr. Holmes and he was to use it for her

maintenance while living, and, after her death and the payment of her funeral expenses, what was left was to go to Christina Schlick, her sister. But that aside, our decisions seem to justify the admission of this trustee's testimony, who by his answer claimed no personal interest in the property in issue between plaintiff and his codefendant. The trustee of an express oral trust in personalty has no such interest, either in the property of the trust or in the issues between claimants thereto, as will bar him from testifying in respect to conversations with the deceased creator of the trust. That seems to be the purport of our decisions in Bowers v. Schuler, 54 Minn. 99, 55 N. W. 817; Geraghty v. Kilroy, 103 Minn. 286, 114 N. W. 838; Burmeister v. Gust, 117 Minn. 247, 135 N. W. 980; Dale v. First Nat. Bank, 178 Minn. 452, 227 N. W. 501; Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554, 117 A. L. R. 554; Keough v. St. Paul Milk Co. 205 Minn. 96, 285 N. W. 809. There is no good reason for making a distinction between a trustee and an executor when it comes to conversations with the deceased settlor or with the testator. Moran v. Cook, 181 Wis. 16, 193 N. W. 1000. Plaintiff relies on a statement in Larson v. Lund, 109 Minn. 372, 123 N. W. 1070, but it is to be noted that the decision turned on the proposition that the evidence did not satisfactorily prove that the deceased trustor while living had turned over the property to the trustee, so what was therein stated as to the trustee's testimony appears dictum, especially since it was taken for granted by court and counsel that the conversation was to be eliminated and only that part of the testimony given effect which proved acts relative to the property involved.

Did the transaction between Mr. Holmes and Mrs. Gibson transfer the legal title to the $3,300 turned over to him by Mrs. Gibson so as to constitute an irrevocable trust fund? The trial court has so found, and we deem the finding sustained. The transaction cannot be considered an attempted testamentary disposition, for full possession of the fund was delivered to the trustee by the trustor while living, and the trustee at once entered upon the performance of the trust. It is said the fact that Mr. Holmes deposited the fund in the bank under the designation of "agent" shows that he

did not consider himself a trustee of the deposit. However, it appears that this was done at the suggestion of a bank official, to keep the fund separate from Mr. Holmes' personal deposits. It is also argued that the fact that Mrs. Gibson executed a will in favor of Mrs. Salscheider after turning over this money to Mr. Holmes, indicates that Mrs. Gibson did not consider that title had irrevocably passed, for no other property than this claimed trust fund appears upon which the will could operate. If what took place between Mr. Holmes and Mrs. Gibson when she delivered the $3,300 constituted in law an irrevocable trust, Mrs. Gibson's subsequent change of heart would not affect the matter, 65 C. J. [§ 113] 14, p. 340. But it is contended that an oral trust in personalty is not permissible in this state. No writing was required at common law to establish a valid trust in personalty. Restatement, Trusts, § 39: "Except as otherwise provided by statute, an enforceable trust can be created without a writing." That such is the law in this state appears or is taken for granted in Conrad v. Marcotte, 23 Minn. 55; Randall v. Constans, 33 Minn. 329, 23 N. W. 530; Larson v. Lund, *supra;* Ober v. Brewster, 113 Minn. 388, 129 N. W. 776; Cisewski v. Cisewski, 129 Minn. 284, 152 N. W. 642; Deposit T. & S. Bank v. Hauert, 153 Minn. 102, 189 N. W. 599; In re Estate of Reifsteck, 197 Minn. 315, 267 N. W. 259. The statement in Wunder v. Wunder, 187 Minn. 108, 244 N. W. 682, that oral trusts of personalty are void or abolished by 2 Mason Minn. St. 1927, § 8081, must be considered inadvertent due to the position taken by counsel for both parties therein. Our decisions holding bank deposit trusts valid, although not established by a writing of the settlor of the trust, support the conclusion that an express oral trust in personalty need not be in writing. Walso v. Latterner, 140 Minn. 455, 168 N. W. 352 (where such trust was held authorized by subd. 5 of § 8090, 2 Mason Minn. St. 1927, and not by subd. 6 thereof); Dyste v. Farmers & M. Sav. Bank, 179 Minn. 430, 229 N. W. 865. It is also to be noted that Y. M. C. A. v. Horn, 120 Minn. 404, 139 N. W. 805, and In re Trusteeship Under Will of Bell, 147 Minn. 62, 179 N. W. 650, were cases where the trust was in writing but where it was definitely held that the trusts

were authorized by subd. 5 of § 8090. In this connection reference may be made to the article by Dean Fraser in 9 Minn. L. Rev. p. 329, anent the decision in the Horn case, *supra*. However, we hold that an express oral trust in personalty is authorized by subd. 5 of § 8090.

But plaintiff invokes 2 Mason Minn. St. 1927, § 8458:

"Every grant or assignment of any existing trust in goods or things in action, unless the same is in writing, subscribed by the party making the same, or by his lawfully authorized agent, shall be void."

It is said the word "grant" is the legal synonym of "declaration," and therefore a writing subscribed by the settlor is necessary to a valid trust even in personalty. The presence of the word "grant" in the statute may be explained by the fact that the original enactment (Public Statutes 1849-1858, c. 51, § 2, Revised Statutes 1851, c. 64, § 2) read: "Every grant or assignment of any existing trust in lands, goods, or things in action," etc. So long as the statute related to *lands* the propriety and applicability of the word "grant" remained apparent. But in G. S. 1866 (c. 41, § 9) the word "lands" was dropped. It is not deemed needful now to define the meaning of the word "grant" in the statute, because more than 60 years ago in Conrad v. Marcotte, *supra*, the statute then reading precisely as now, it was held not applicable to oral trusts of personalty, delivered to one for the benefit of creditors. Here, Mrs. Gibson delivered the property to Mr. Holmes. He accepted and performed as to her. So far as he has executed the trust it is not questioned. The law appears settled that in such a situation the statute of frauds does not void the trust. 65 C. J. [§ 39], p. 257.

The remaining claim is that the evidence was not "of such a clear and satisfactory nature so as to permit the court to find as a fact that such an oral trust had been created." To us the evidence appears to support the findings more clearly and satisfactorily than in the usual run of trust cases, and although this last proposition is made it is not stressed or discussed in plaintiff's able brief.

The judgment is affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

