ALFRED EDGER TOLLEFSON v. NEIL A. EHLERS AND ANOTHER.

DUANE C. BJELLAND, APPELLANT.

90 N. W. (2d) 205.

May 9, 1958—No. 37,406.

*Swore & Wallace,* for appellant.
*I. L. Swanson,* for respondent.

DELL, CHIEF JUSTICE.

This action, arising out of an automobile accident, is brought by plaintiff as trustee for the heirs and next of kin of the decedent. Each defendant claimed at the trial that the accident was the result of the other's negligence. The case was submitted to a jury which found against both defendants and awarded plaintiff $16,897.61. Defendant Neil A. Ehlers did not appeal. Defendant Duane C. Bjelland moved for judgment notwithstanding the verdict or in the alternative for a new trial. From the denial of that motion this appeal was taken.

The accident occurred January 2, 1957, at the junction of Highways 55 and 59 approximately 3 miles north of Elbow Lake. Highway 59 is a through highway which runs generally north and south. Highway 55 joins it from the west at right angles; they merge and continue southward for a distance until they divide again. At the junction a gravel road from the east joins Highway 59 so that an intersection is formed. The accident occurred in the afternoon and there is no claim that weather conditions contributed to it.

Decedent and another were passengers in the Ehlers automobile. They

were proceeding west on the gravel road and intended to cross over Highway 59 and continue on Highway 55. Ehlers saw the through stop sign protecting Highway 59 and stopped a half car length from the intersection. He testified that while he was coming to a stop a car passed in front of him going south on Highway 59 and that after he had completed his stop a second car, also going south, drove by. He looked to his right, then to his left, and seeing no cars in either direction entered the intersection. When he had crossed far enough so that the front wheels of his car were at the west edge, or a little beyond the west edge, of the pavement of Highway 59, his car was struck at about the middle of its right side by Bjelland's vehicle which was proceeding south on Highway 59. The Ehlers car came to rest about 108 feet west and 37 feet south in a field. The impact had smashed in the right side of the car approximately at the door and had caused the roof to buckle. The front of Bjellant's car was smashed in and the left front fender was almost totally demolished. Decedent was injured and was removed to a hospital in Fergus Falls where he died the same afternoon.

Ehlers' view to the north along Highway 59 from the gravel road was unobstructed to the top of a knoll which was 18 feet above the level of the intersection and was variously estimated at from 30 rods to a quarter of a mile away. From the evidence and the admissions made by counsel for Bjelland upon the oral argument in this court, the distance is approximately 1,000 feet. Bjelland testified that at the time of the accident he was on his way to the Twin Cities and that he had been following another car whose occupants were friends of his at from 200 to 500 feet. The distance between the cars at the time of the accident is not definitely fixed. The drivers and passengers of both cars claimed they were traveling about 55 miles an hour but these were only estimates because in neither vehicle was the speedometer working. Bjelland further testified that when he came over the knoll he saw the Ehlers car stopped or coming to a stop at the entrance to Highway 59. He then glanced to his right and did not see the Ehlers car again until he glanced back, at which time he was approximately 82 feet from it and the impact was imminent. The collision followed.

■ Because he has taken no appeal, we need not concern ourselves

at all with questions regarding negligence on the part of Ehlers or whether such negligence, if any, was a proximate cause of the collision except, of course, in so far as they pertain to the issues raised by Bjelland. Bjelland contends that he was entitled to a verdict in his favor as a matter of law because he was not negligent or, if he was, his negligence was not a proximate cause of the collision. He bases his claim upon his version of the accident, which is that when he was approximately 200 feet from the intersection, and while he was traveling approximately 55 miles an hour, he saw Ehlers either stopped or coming to a complete stop; that he was then sufficiently close to the intersection to constitute an immediate hazard and therefore had the unqualified right-of-way;[1] that he then looked to his right while proceeding with undiminished speed; that when he looked back he was approximately 82 feet from the intersection; that he then saw Ehlers in the intersection and "knew we were going to hit"; and that the collision followed as the result of the sole negligence of Ehlers and through no fault of his own.

It may be that Bjelland's position could be sustained if his testimony were undisputed. But this is not the case. Ehlers' testimony as to what happened differed and the jury was free to resolve the conflict as it interpreted the facts. It might well have found that when Bjelland came over the top of the knoll, somewhere in the neighborhood of 1,000 feet from the intersection, he saw Ehlers stopped or coming to a stop at the intersection; that he proceeded along the highway without reducing his speed; that he looked to the right for traffic in that direction; that he did not look back to the left again until he was approximately 82 feet from the intersection at which time he saw Ehlers in front of him; and that knowing a collision was imminent he applied his brakes laying down skid marks of 42 feet before the impact. Upon this version of the facts we cannot say that Bjelland was free from negligence as a matter of law. In Schleuder v. Soltow, 239 Minn. 453, 459, 59 N. W. (2d) 320, 324, we said:

"* * * a person driving on a through highway at 60 miles an hour in the daytime need not reduce his speed while approaching and passing

---

[1]M. S. A. 169.20, subd. 3; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

over intersections along the through highway protected by stop signs where no special hazard exists other than an automobile approaching the intersection or stopped at it in obedience to a stop sign, *provided that the driver of the automobile on the through highway is so close to the intersection as to constitute an immediate hazard to the automobile on the intersecting highway* and provided further that the driver of the automobile on the through highway does not have reason to know that the driver on the intersecting highway is not going to obey the statute and yield the right of way to him. Likewise, drivers of vehicles on intersecting highways approaching the intersections of through highways protected by stop signs must anticipate that automobiles being driven upon through highways may approach and· pass through intersections along the through highways at 60 miles an hour in the daytime where no special hazard exists without subjecting their drivers to a charge of negligence." (Italics supplied.)

Certainly it was for the jury to decide whether, when Bjelland first saw Ehlers stopped or stopping at the intersection, Bjelland was or was not so close to the intersection as to constitute an immediate hazard, and whether the collision occurred because of his failure to yield the right-of-way or his failure to keep a proper lookout under the circumstances or because of excessive speed. The jury was not required to accept Bjelland's testimony as to speed which was admittedly an estimate even though it was uncontradicted, if it was improbable or if the surrounding facts and circumstances, such as the extent of the damage to both vehicles in the light of his testimony that he had applied his brakes, furnished *reasonable grounds for doubting its credibility.*[2] Only when the evidence is viewed in the light most favorable to Bjelland can his contention be sustained. But on appeal we are required to consider the evidence in the light most favorable to the verdict[3] and in doing so we conclude that the evidence supports the jury's findings.

■ Appellant also claims that the court erred in reading certain statutes to the jury and that this constituted reversible error. After

---

[2]Blazek v. North American Life & Cas. Co. 251 Minn. 130, 138, 87 N. W. (2d) 36, 43.

[3]Johnson v. Evanski, 221 Minn. 323, 327, 22 N. W. (2d) 213, 215.

defining negligence and instructing the jury that negligence may consist in the violation of a statute, the court read to it certain provisions of the Highway Traffic Regulation Act which govern the operation of motor vehicles upon the highways, including the definitions of "through highway," "intersection," and "right-of-way."[4] Following these it read the rules relating to speed restrictions[5] and instructed the jury that the speed limit which applied here was 60 miles an hour. It then proceeded to read M. S. A. 169.14, subd. 3, which provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Thereupon the court read § 169.20, subd. 3, dealing with the right-of-way at a through highway and explained it. Later in the charge the court instructed the jury as follows:

"You are further instructed that the defendant Bjelland, who was driving upon the trunk highway in this case, was not required to slow down as he approached this intersection until he saw or in the exercise of due care should have seen that the other defendant was not going to yield the right of way to him if he, in fact, did have the right of way."

It is appellant's position that the two quoted instructions were obviously in conflict with one another. Concededly there is some conflict between the two when standing alone and out of context, but considering the instructions as a whole and the chronological order in which they were given,[6] we do not feel that error was committed under the facts of this particular case, at least any error sufficiently prejudicial to warrant a new trial.

---

[4] § 169.01, subds. 35, 36, 45.

[5] § 169.14, subds. 1, 2.

[6] Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; 19 Dunnell, Dig. (3 ed.) § 9781.

This is not the first time that the problem raised by an indiscriminate reading of statutes has come before us.[7] In the instant case, however, by reading both the reduced-speed statute and the right-of-way statute before giving the allegedly inconsistent instruction, the trial court left it squarely to the jury to determine which defendant had the right-of-way before proceeding to determine whether or not Bjelland was required to reduce his speed. We have already indicated that this was a proper question for its consideration. The trouble, if any, therefore, lay not in the reading of the statutes but in failing to specifically qualify their application by instructing the jury as to when and how they might have come into play.[8] It is not always easy for the trial court to decide whether it is submitting only those statutes which have a direct bearing upon the case or whether it is actually resolving a fact question for the jury by not giving a certain statute and thereby limiting the scope of its deliberation. Where, upon different versions of the facts, different statutes might be applicable, the trial court should not, in effect, foreclose consideration of a tenable theory by failing to give relevant statutes or sections thereof.[9] On the other hand, it would be equally confusing and improper for a trial court to read a long series of statutes, some of which might have only a restricted application, without so informing the jury and still expect it to adequately perform its function. It, therefore, seems proper to hold that where factual matters are involved, if sufficient evidence is introduced to sustain a jury's finding in accordance with a possible version thereof, a party is entitled to have any statute which may be relevant given to the jury, provided that in those instances where a statute may be relevant only upon a single interpretation of the facts, the trial court limits such statute in its application either by a specific instruction or by the entire tenor of its charge.[10] In the instant case we are of the opinion that the trial court's

[7]See, Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85; Kerzie v. Rodine, 216 Minn. 44, 11 N. W. (2d) 771; Olson v. Neubauer, 211 Minn. 218, 300 N. W. 613.

[8]See, Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85.

[9]Cf. Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62.

[10]See, Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351; Froden v.

explanation as it read the statutes and the quoted instruction served sufficiently to define the possible relation between § 169.20, subd. 3, and § 169.14, subd. 3, and that in giving the latter the trial court did not err.

■ Finally Bjelland contends that the evidence does not warrant a verdict of $16,897.61. Of this amount $997.61 represents the hospital, medical, and funeral expenses which were incurred by virtue of this accident and the parties have so stipulated. Appellant's argument is that the remainder of $15,900 is far in excess of the pecuniary loss which plaintiff, decedent's father and sole heir, has sustained because according to the American Experience Tables of Mortality plaintiff, a man of 71, has a life expectancy of 8.16 years. The jury, however, was not required to accept this figure merely because of the mortality table,[11] especially when the best evidence available, the plaintiff himself, was before them. They saw him and heard his testimony concerning his health. For approximately 3 years preceding his son's death he had been unable to perform any heavy work on the farm which he and decedent cultivated although for many years prior to that he had worked very hard. Plaintiff had had an operation in 1948 but claimed to be physically sound except for an occasional attack of the flu. From this the jury might easily have concluded that plaintiff would outlive his life expectancy.

The monetary value of each and every service which decedent performed for the plaintiff cannot be determined exactly. Plaintiff estimated that the value of decedent's services on the farm—and not the total value of his services, as appellant contends—was about $100 a month. But decedent performed other services too. Since the death of his mother in 1948, he had also helped with the housework as well as doing all the heavy farm labor. He had washed floors, cooked meals, washed dishes, and cared for his father after his operation, and when he was ill with the flu. They attended church together regularly and decedent drove plaintiff wherever and whenever the latter wished to go

Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97.

[11]Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16.

fishing or visiting and then would pick him up and drive him back home. On occasion he would also give money to the plaintiff. All of these factors might properly have influenced the jury in making its award. Moreover, it could also take into consideration the likelihood that plaintiff's living expenses would increase as he grew older and that decedent would have continued to provide for him had he lived.

At his death decedent was 24 years old. He had never worked away from home except when he occasionally assisted a neighbor. He did not drink, "run around," or keep company with a girl. In the light of such variables as decedent's character, health, habits, talents, and parental contributions, the jury could reasonably find that by his death plaintiff sustained a loss of $15,900.[12]

We have not overlooked the other arguments urged by defendant as grounds for reversal. We are satisfied that they are not such as to require a reversal nor are they sufficiently important to justify comment.

Affirmed.

[12]Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843.