NELLIE M. McCORKELL, TRUSTEE FOR NEXT OF KIN OF WILLIAM J. FLEMING, v. CITY OF NORTHFIELD AND OTHERS.

136 N. W. (2d) 840.

July 23, 1965—No. 39,673.

---

[3] Cates v. Evans (Mo. App.) 142 S. W. (2d) 654; see, Smith v. Epstein Realty Co. 133 Neb. 842, 277 N. W. 427.

Sawyer & Lampe and Burton R. Sawyer, for appellant.

Warren D. Chamberlain, Wayne G. Popham, G. Marc Whitehead, and Erickson, Popham, Haik & Schnobrich, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for death by wrongful act brought by Nellie M. McCorkell, maternal grandmother of William J. Fleming, decedent, trustee for the benefit of his next of kin. Decedent met death while imprisoned in the municipal jail in the city of Northfield on June 11, 1961.[1] He left surviving as next of kin Marjorie Bolin, his mother, and William Fleming, his father, who had been divorced from each other since decedent was an infant. The jury returned a verdict in the sum of $14,650 for plaintiff against defendant city.

This is an appeal from an order denying defendant's motion for a new trial. On appeal defendant's contentions are that (1) the verdict is excessive; (2) the statement of plaintiff's counsel in his final argument that the jury's award would probably be paid for by funds from the "Municipal Liquor Store in Northfield" constituted reversible error; (3) the jury was misled as to the meaning of the term "next of kin" by the final argument of plaintiff's counsel and the court's failure to correct the impression it left with the jury;[2] (4) the court erred in the reception of evidence as to con-

---

[1] This case has been before us on one previous occasion. See McCorkell v. City of Northfield, 266 Minn. 267, 123 N. W. (2d) 367, wherein it was held that this cause of action could be maintained against the city of Northfield because of its failure to comply with Minn. St. 642.02, subd. 2, requiring that "[a] jailer or custodian shall be present during the time any prisoner is detained in such lockup."

[2] Minn. St. 573.02, subd. 1, provides in part: "When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 2 may maintain an action therefor * * *. The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, shall not exceed

versations between plaintiff and William J. Fleming prior to his death; and (5) other prejudicial errors occurred as hereafter set forth.

The facts upon which defendant's liability was determined are as follows: William J. Fleming, then 32 years of age, met death on June 11, 1961, while imprisoned in the municipal jail in Northfield at a time when it was unattended. His death was due to asphyxiation, apparently the result of fire and smoke in his cell shortly after his imprisonment in the late hours of June 10, 1961. As indicated above, the basis of plaintiff's claim was defendant's failure to provide a jailer or custodian during decedent's imprisonment in compliance with Minn. St. 642.02, subd. 2. (See footnote 1.)

■ With respect to defendant's contention that the verdict was excessive, the evidence submitted on this issue fairly established that at the time of his death decedent was 32 years of age and unmarried; that since the divorce of his parents when he was about 4 months old he had lived with his grandmother, Nellie M. McCorkell, and had not been supported by his father; that commencing in 1950 he had served approximately 3 years in the armed forces of the United States during which his monthly allotment in the sum of $60 had been paid regularly to his grandmother; that upon his return from service he had continued to live with his grandmother and had contributed to her support by payment of monthly sums for room and board and his purchase for her of such appliances as an automatic washer; dryer; gas range; television set; and an electric sewing machine; and in his payment of one-half the cost of an automobile which she had used; that while during all this period she had been employed as a chef in Northfield, because of her advanced age (72 years at time of trial) she had contemplated early retirement; that decedent's mother had been remarried

---

$25,000, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly."

The "next of kin" in such an action are determined pursuant to § 525.16. In the instant case decedent's mother and father would be his next of kin. The proportion of the award each would receive would be dependent upon their respective proofs of pecuniary loss due to his death as determined by the court pursuant to § 573.02, subd. 1.

to a Mr. Bolin who had died in 1957 but that decedent at no time had resided with her prior or subsequent to this marriage except for a few weeks in 1954 while he was recuperating from injuries received in an automobile accident; that at no time had he contributed to her support beyond occasional gifts which he had bought for her; and that at no time had he contributed to the support of his father.

On this issue the evidence further disclosed that in 1954, as a result of an automobile accident while he was driving a taxicab, decedent's right leg had been amputated and thereafter he was required to use an artificial leg; that because of pain and the failure of the stump to heal he had been required to undergo a number of operations; that the amputation of this leg and the resulting pain had limited his capacity for work and had led to his use of intoxicants for several years prior to his death; that for a number of years after the amputation of his leg he had worked for Hughes & Heckler, Inc., a hardware firm in Northfield, but for about a year prior to his death he had been unemployed; that his loss of work in all probability was due to his use of intoxicants as well as the disability resulting from his amputation; that for a number of years prior to his death a principal source of his income had been the workmen's compensation payments awarded him for the loss of his leg out of which he had made contributions to his grandmother; and that this compensation award had been fully paid up shortly before his death.

Further there was testimony that prior to decedent's drinking problems he had had an excellent employment record; that he was well liked, conscientious, industrious, and trustworthy; that he had undergone surgery repeatedly in an effort to relieve the pain and suffering which followed the amputation; and that further surgery therefor had been contemplated with the possibility that this might relieve his pain and enable him to resume employment.

In a memorandum attached to the order appealed from, the trial court stated:

"On the damages issue the Court has in effect applied the Holz Case (Holz v. Pearson, 229 Minn. 395, 39 N. W. (2d) 867); in that case the decedent made contributions to her grandchildren, and this was ruled admissible in the action where the next of kin were the parents of the grand-

children. In the instant case the converse situation arose, this Court admitted evidence of contributions by a grandchild to grandmother in an action in which the mother was the principal next of kin. This Court believes this evidence properly admissible not only on the ground that what the decedent contributed to grandmother is vicariously a contribution to the grandmother's daughter (the next of kin in this case), the decedent's mother; it is admissible also on the ground it is a measurement of the charitable nature of the decedent toward the object of his affection and bounty, who while she lived was primarily grandmother. But because of her life expectancy grandmother would probably predecease the mother; therefore, the jury could conclude the decedent would naturally shift his primary affection back to his mother.

\* \* \* \* \*

"The verdict itself, while not inadequate, is not excessive. The decedent had a great many years of life ahead of him \* \* \*. His generous nature toward the persons whom he showed affection and showered with his bounty was quite clearly shown by the evidence. Considering the fact he was single, it is not unreasonable to expect his contributions toward his mother, particularly when she reached retirement age, as toward his grandmother, would be generous."

Under the evidence submitted we do not feel that the verdict of $14,650 for the death of William J. Fleming at the age of 32 years was excessive. While it is true that his earning capacity had been curtailed by the prior loss of his leg and the attendant pain which thereafter persisted and made it difficult for him to work and created his drinking problem, the jury might well conclude that this situation might end following the corrective surgery, which was contemplated at the time of his death. Decedent made his home with his grandmother for a number of years prior to his death and his principal contributions from his earnings had been for her benefit, but this situation might have extended for but a few more years, when decedent's ultimate obligation to his mother would have arisen and the jury could well reflect that this obligation might then continue for a considerable number of years. As the court stated in Moore v. Palen, 228 Minn. 148, 154, 36 N. W. (2d) 540, 543, 7 A. L. R. (2d) 1374:

" * * * in actions for wrongful death damages for the potential support of children can be awarded * * * even though the children be adults and have been separated from the parents in terms of aid or benefit to the parents at the time of the wrongful death. * * *

" * * * Probable contributions are a substantial element in computing damages to parents for loss of children."

Likewise, the jury might consider that decedent's continued contributions to his grandmother, in a large measure, would have relieved his mother in this respect. Thus in Holz v. Pearson, 229 Minn. 395, 39 N. W. (2d) 867, which involved contributions made by a decedent to her grandchildren for whose care she was not responsible, it was held (229 Minn. 406, 39 N. W. [2d] 874):

" * * * [S]uch gifts, contributions, and services as were shown here to have been furnished by decedent were for the benefit of the next of kin within the meaning of the statute, including items of clothing, shoes, and other necessaries furnished by decedent to her grandchildren. These were items which the parents were obligated to furnish, if possible. In being relieved by decedent of the necessity of furnishing some of them, the parents were necessarily benefited."

Further, in considering the pecuniary loss of the next of kin, the jury was entitled to consider factors such as the aid, advice, comfort, and protection which the survivor might reasonably have expected from the decedent and which it has been held constitute elements of loss for which money may supply some substitute. See, Fussner v. Andert, 261 Minn. 347, 113 N. W. (2d) 355; Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205; Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843. When all these factors are taken into consideration it seems clear that the jury's award for plaintiff here was not so excessive or exorbitant as to require a reduction. See, Schroht v. Voll, *supra*.

■ Defendant contends that a new trial should be granted because in his final argument plaintiff's counsel stated:

" * * * [Y]ou would not be embarrassed by rendering a verdict against the City and * * * those taxpayers who live in the City of Northfield, although the amount spread on an individual basis * * *

would certainly be very little on an individual basis, and very likely from the General Fund, which is supported chiefly by the Municipal Liquor Store in Northfield."

After this argument, defendant's counsel took exception to the statement described and requested the court to enlighten the jury thereon. This the court did by stating to the jury:

" * * * [P]laintiff's counsel in his argument to you made some reference to the Revenue Fund of Northfield being contributed to, I think, by a municipal enterprise in the Village of Northfield—I believe it was the liquor store—and I instruct you that this is not a valid factor for you to consider in this case, and it is not material at all as to how the Revenue Fund in Northfield is supported, and as a matter of fact it is not of any concern to you as to how the money is paid if a verdict is rendered."

Defendant took no further exception on this point and it would seem that after this procedure the jury was well advised that it was to give no consideration to the source from which any award it might make would be paid. See, Marcum v. Clover Leaf Creamery Co. 225 Minn. 139, 30 N. W. (2d) 24.

■ Defendant complains that plaintiff's counsel in his final argument misled the jury as to decedent's next of kin by implying that his grandmother would benefit by the verdict. However, subsequent to the final argument, any suggestions to this effect were corrected by the court's instructions as to the meaning of the term *next of kin* and the procedure which followed such instruction. Thus the court instructed the jury:

"Now in considering the amount of pecuniary loss suffered by the death of the decedent, you are instructed that *the plaintiff trustee, Nellie M. McCorkell, is not one of the next-of-kin of William J. Fleming as that term is defined by law.* However, if you should find that any contributions which William J. Fleming made to his grandmother, Nellie McCorkell, were in effect a contribution to his mother, because they aided the mother in support of the grandmother, then you may further take into consideration such contributions in fixing the amount of pecuniary loss sustained by his next-of-kin. *His next-of-kin stated here would not then include his grandmother,* but the evidence of the contributions made to the grand-

mother were allowed under this statement I made here." (Italics supplied.)

Thereafter, the following took place:

"[The Court] Do counsel note any error or omissions in the Court's instructions?

\* \* \* \* \*

"Mr. Sawyer [counsel for defendant]: The defendant takes exception to the failure of the Court to charge the jury that counsel for the plaintiff, in his argument, made the statement that twenty-five thousand dollars for Mrs. McCorkell is a living for her of twenty-five hundred dollars per year for ten years, and that was improper \* \* \*.

"The Court: I thought I covered that by saying she was not the next-of-kin.

"Mr. Sawyer: Secondly, the defendant takes exception to that part of the charge of the Court \* \* \* stating, in effect, that if the jury finds that there were contributions made by the decedent to the grandmother, which in effect were a contribution to the decedent's mother, Marjorie Bolin, because they were made for her benefit, that they could take that into consideration."

Following these exceptions, the court instructed the jury as follows:

" \* \* \* [J]ust to clarify a point, the Court will state to the jury that the statement made in the plaintiff's final statement, in which he referred to the fact that twenty-five thousand dollars would care for Mrs. McCorkell for a certain period of time, is not a factor that the jury should consider, and I so instruct you that any consideration of what an award would do to Mrs. McCorkell is of no consequence to this jury, and you should disregard it."

After this no further exception was taken by defendant and we are satisfied that the court's enlightenment of the jury on the meaning of the term *next-of-kin* nullified any misconception which it might have gained from the arguments of plaintiff's counsel. It is well established that matters such as these rest largely in the discretion of the trial court and we find no abuse of it here. See, Kordiak v. Holmgren, 225 Minn. 134, 30 N. W.

(2d) 16; Cohoon v. Lake Region Produce Co. 188 Minn. 429, 247 N. W. 520.

■ Defendant asserts that the trial court erred in failing to sustain objections to the testimony of Mrs. McCorkell with respect to her future plans. It is defendant's contention that such testimony was based upon conversations with the decedent and that since Mrs. McCorkell was a party to the action and interested in its outcome this testimony was barred under Minn. St. 595.04.[3] The testimony complained of was as follows:

"By Mr. Chamberlain [counsel for plaintiff]:

"Q. And what were your plans in connection with retirement?

"Mr. Sawyer: That is objected to as immaterial and insufficient foundation.

"The Court: I will overrule it, the witness may answer.

\* \* \* \* \*

"A. Well, I agreed with the plans Bill made, and that was—

"Mr. Sawyer: I move to strike that upon the ground it's based upon a conversation with a decedent.

"By Mr. Chamberlain:

"Q. Just state what your plans were.

"Mr. Sawyer: Just a second, I move to strike the answer.

"The Court: The motion to strike the answer is granted.

"By Mr. Chamberlain:

"Q. Just tell us what your plans were in connection with retirement, Mrs. McCorkell.

"A. I was going to let him have his leg amputated above the knee, because I knew that would benefit him, and he felt he would be a man

---

[3] Minn. St. 595.04 provides: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."

again, and then I could have stayed at home and used my Social Security, and he would have went on working."

It seems clear that such testimony had no relation to conversations with decedent, but was limited to plans and ideas of the witness formulated by her alone in the belief that they would meet with the approval of decedent. We find no error in the admission of this testimony. Tousley v. First Nat. Bank, 155 Minn. 162, 193 N. W. 38; Drager v. Seegert, 138 Minn. 6, 163 N. W. 756.

■ Defendant assigns a number of additional errors, mostly relating to the instructions. The record indicates that no exceptions were taken to the instructions complained of and that for the most part they did not relate to fundamental principles of law. No authorities are cited in support of defendant's contentions that they were erroneous. In defendant's brief the arguments thereon are minimal. Notwithstanding this, we have given these assignments careful consideration but conclude that none of them relate to matters which would be prejudicial to the extent of requiring a new trial.

Affirmed.