GLENN M. SELLNOW, TRUSTEE OF THE SURVIVING PARENTS AND NEXT OF KIN OF DALE W. SELLNOW, v. DENNIS M. FAHEY AND OTHERS.

233 N. W. 2d 563.

September 19, 1975—No. 45214.

*Head & Truhn* and *Jerome Truhn,* for appellant.

*Carroll, Cronan, Roth & Austin, Frank X. Cronan,* and *Robert M. Austin,* for respondents.

Heard before Sheran, C. J., and Kelly and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

This is an action for wrongful death commenced by Glenn M. Sellnow, brother of the decedent, as trustee of Murrell and Florence Sellnow, the parents and surviving kin of decedent. Decedent, Dale Sellnow, was killed in a head-on automobile collision on June 21, 1971, on a county road in Scott County, Minnesota. At the time of his death, Dale was 17 years old and had just graduated from high school.

After trial in district court, the jury returned a special verdict in which it found that defendant Dennis M. Fahey was negligent and that his negligence was a direct cause of the accident. The jury also found that decedent was negligent but that his negligence was not a direct cause of the accident. The jury found damages in the amount of $28,500. Plaintiff moved for a new trial,

alleging that the trial court erred in excluding certain proposed testimony. The motion was denied, and plaintiff appealed to this court. We reverse and remand for a new trial on the question of damages only.

In chambers, immediately prior to trial, counsel for plaintiff made an offer of proof that plaintiff, Glenn Sellnow, would testify concerning certain conversations which took place on the Sellnow farm in the fall of 1970 and in the spring of 1971 among Glenn; his deceased brother, Dale; and their father, Murrell. In these conversations, according to the offer of proof, Dale had agreed that starting in the spring of 1971 he would work the Sellnow farm full-time and that he would evenly divide the proceeds therefrom with his parents for a period of approximately 10 years, at which time Murrell Sellnow intended to retire. Thereafter, Dale would financially support his parents from the proceeds of the farm until their death. Further, according to the offer of proof, Murrell Sellnow would testify that it was his intention to turn the family farm over to his son Dale to work full-time. In return, Murrell would expect to receive 50 percent of the net proceeds of the farm until his anticipated retirement in 10 years, after which he intended to rely upon Dale for his support. A similar offer of proof was made concerning the proposed testimony of Florence Sellnow, the decedent's mother.

Plaintiff concluded the offer of proof by stating that a qualified real estate appraiser would testify that decedent could reasonably have expected an income of $11,000 per year from the farm operation during the period 1971 to 1981, and that a qualified economist would testify that, based on Murrell Sellnow's life expectancy, the present value of support, assuming an intermediate budget of a retired couple, for the years 1981 to 1992 would be approximately $37,000.

During the course of the trial, decedent's father, Murrell, testified that he, the father, was born and raised on the farm in question and that his father also had been born and raised on the same farm. Counsel for plaintiff then asked Murrell whether

he had had "any kind of agreement" with his father with respect to the proceeds of the farm when he, Murrell, married Florence, at which time Murrell's father moved off the farm into a nearby urban community. After objection, plaintiff made an offer of proof, not made a part of the record but not contested by defendant, that Murrell would testify that he had agreed to divide the proceeds from the farm with his father and had agreed to financially support his father and that he, Murrell, had fulfilled those commitments. The trial court sustained the objection to the offered testimony.

In denying plaintiff's motion for a new trial, the trial court did not prepare a memorandum explaining the basis for his rejection of the offered testimony nor does the record disclose that the trial court stated any basis for his rulings at the time of the offers of proof. However, we assume the testimony was rejected for the reasons argued by defendants: (a) That a portion of the offered testimony is inadmissible under Minn. St. 595.04, the so-called deadman's statute; (b) that loss attributable to decedent's inability to fulfill his commitments to his parents is not recognized under our wrongful death statute; and (c) that the testimony is speculative and conjectural.

■ Minn. St. 595.04 provides:

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."

In the usual case, plaintiff Glenn Sellnow, because he is a party to the action, would be barred from testifying to the alleged con-

versation by the express terms of the statute. However, in this case, plaintiff is a purely nominal party, appointed trustee solely for the purpose of bringing this action,[1] and it is plaintiff's parents, not plaintiff, who will benefit from any recovery obtained in the action. We held in 1893 that the phrase "party to an action," as used in the statute (at that time 1878 G. S. c. 73, § 8), means a party to the issue, Bowers v. Schuler, 54 Minn. 99, 103, 55 N. W. 817 (1893), and we have several times since held that the statute does not render a nominal party incompetent to testify. For example, in Salscheider v. Holmes, 205 Minn. 459, 286 N. W. 347 (1939), we held that a trustee of an express oral trust in personalty could testify even though he was a party to the action because he had no sufficient interest either in the property of the trust or in the issues between the claimants to bar his testimony under the statute. See, also, Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554 (1938); Sample v. Differt, 296 Minn. 471, 206 N. W. 2d 559 (1973).

Further, plaintiff, Glenn Sellnow, is not an "interested" person for purposes of the testamentary exclusion of the statute. As we made clear in In re Estate of Arnt, 237 Minn. 245, 248, 54 N. W. 2d 333, 336 (1952):

"To render a person incompetent as a witness under § 595.04, he must have some legal, certain, and immediate interest in the event of the action with respect to the issue to which his testimony relates. The interest must be pecuniary, certain, direct, and immediate, and not an uncertain, contingent, remote, or merely possible interest."

Glenn Sellnow's only interest in this case is as the surviving son of decedent's parents. As such, he has no pecuniary, certain, direct, and immediate interest. His expectation as a potential beneficiary of his parents' estate is contingent and uncertain and obviously constitutes merely a possible interest. The parties are free to argue the weight to be placed by the jury on Glenn's testi-

---

[1] See, Minn. St. 573.02, subd. 3.

mony, but we perceive no reason why this testimony should have been excluded under the deadman's statute. Therefore, we hold that it was error to exclude the proffered testimony of plaintiff, Glenn Sellnow.

■ We have also concluded that the testimony of Murrell and Florence Sellnow concerning their expectations and intentions to rely upon their deceased son for income from the farm for 10 years and support thereafter, and the testimony of Murrell Sellnow as to the similar arrangement he had with his father concerning the same farm, should have been admitted into evidence. We reach this conclusion because of our belief that these expectations did not arise solely from the conversations in 1970 and 1971 with decedent. McCorkell v. City of Northfield, 272 Minn. 24, 136 N. W. 2d 840 (1965), also a wrongful death action, involved a similar issue. In that case the decedent had lived with and rendered support to his grandmother. In response to a question from her attorney concerning her "plans in connection with retirement," the decedent's grandmother replied, "Well, I agreed with the plans [decedent] made, and that was—." Upon objection, the answer was stricken, but shortly thereafter, in response to a similar question concerning her plans for retirement, she was permitted to testify (272 Minn. 33, 136 N. W. 2d 846):

"I was going to let him have his leg amputated above the knee, because I knew that would benefit him, * * * and then I could have stayed at home and used my Social Security, and he would have went on working."

On appeal, in discussing a challenge to the grandmother's testimony, we said (272 Minn. 34, 136 N. W. 2d 846):

"It seems clear that such testimony had no relation to conversations with decedent, but was limited to plans and ideas of the witness formulated by her alone in the belief that they would meet with the approval of decedent. We find no error in the admission of this testimony."

As was true in McCorkell, the admissibility of the contested

testimony in this case is a close question. Our conclusion that it should have been admitted in this case is buttressed by the proffered testimony that decedent's father, Murrell, had a very similar arrangement with his father (decedent's grandfather) concerning the very same farm, which had been fulfilled by Murrell. Obviously, testimony as to the arrangement between Murrell and his father in no way involved conversations with decedent, and is relevant and material to the parents' expectations and intentions to rely upon their son for financial support in the same manner as Murrell's father had relied upon him. Therefore, taking the offered testimony as a whole, and in view of our decision in McCorkell, we hold the trial court erred in excluding the testimony of the parents' intentions and the testimony concerning the arrangement between Murrell and his father.

■ Having held the contested testimony is admissible, we have no difficulty in holding that it is relevant and material to the issue of whether the surviving parents suffered direct pecuniary loss.[2]

In Fussner v. Andert, 261 Minn. 347, 113 N. W. 2d 355 (1961), in which we expanded the scope of damages in a wrongful death action to include such elements as loss of advice, comfort, assistance, and protection, we defined the traditional damages test applicable to pecuniary loss as follows (261 Minn. 354, 113 N. W. 2d 360):

"We have often said that the measure of damages is the money value to the survivor of the continuance of decedent's life, measured by the money value of what the evidence shows the decedent probably or with reasonable certainty would have con-

---

[2] Minn. St. 573.02, the wrongful death statute, provides in part: "* * * The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death."

tributed in money, property, or services during the remainder of his life."

It is clear that the offered testimony goes to the issue of what the "decedent * * * would have contributed in money, property, or services" to his parents, and we have so held in other cases. For example, in Schroht v. Voll, 245 Minn. 114, 71 N. W. 2d 843 (1955), we affirmed a verdict based in part on the fact that the minor decedent had planned to go into partnership with his father in raising hogs. See, also, Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. 2d 205 (1958); Fussner v. Andert, *supra.*

Further, the fact that decedent had no legal obligation to support his parents does not preclude admission of this evidence. As we held in Thoirs v. Pounsford, 210 Minn. 462, 467, 299 N. W. 16, 19 (1941):

"The fact that decedent was under no legal obligation to support her sisters was no reason for denying a recovery. The expectation of pecuniary benefit may arise from the obligation or the disposition of the decedent to contribute to the beneficiaries. In either case, the deprivation of such expectancy is a loss for which recovery may be had."

While a legal obligation to contribute on the part of a decedent is an important factor in many wrongful death cases, it is clear that an expectancy of contribution, if sufficiently established by competent evidence, will support a claim under Minn. St. 573.-02 for the deprivation of such expectancy. We therefore hold the contested evidence admissible for the purpose of establishing the pecuniary loss suffered by the parents.

■ Finally, defendants claim that the proposed evidence is so speculative and conjectural that it should not be admitted. Obviously, the question of whether decedent would have fulfilled the arrangement with his parents, the details of which must be established by evidence presented by plaintiff, and whether the parents' expectations would have reached fruition, is one which must be decided by a jury. We have stated that wrongful death

verdicts "must be considered and weighed in the light of such variables as the decedent's character, health, habits, talents, prospects, earnings, and parental contributions." Schroht v. Voll, 245 Minn. 114, 124, 71 N. W. 2d 843, 849. So, too, in this case, the jury, based upon all of the evidence, must assess the damages which they deem fair and just, exercising their best judgment. In that assessment the jury is free to disregard the offered evidence of the arrangement between decedent and his parents and the expectations of the parents, or it may give the evidence such weight as it deems prudent and practical. The fact that the jury may conclude that the arrangement between decedent and his parents would never have been fulfilled does not mean that it should be excluded as competent evidence. The Nebraska Supreme Court in Dorsey v. Yost, 151 Neb. 66, 68, 36 N. W. 2d 574, 575 (1949), discussed a similar question in the following appropriate language:

"* * * It is for the jury to determine the pecuniary value of the child's services which would have accrued to the parents but for the accident. The amount to which a parent is entitled cannot be accurately determined because of the numerous contingencies involved. The amount being very problematical, it is peculiarly for the jury to determine, after hearing all the evidence bearing upon the situation, including the parent's position in life, the physical and mental condition of the child, his surroundings and prospects, and any other matter that sheds light upon the subject."

Because we have concluded that the trial court erred in excluding the contested evidence, we reverse and remand for a new trial on the question of damages only.

Reversed and remanded.