Merlen P. AHRENHOLZ and Donna L. Ahrenholz, Trustees on behalf of the Heirs and Next of Kin of Nicholas John Ahrenholz, Decedent, Appellants (50412) Respondents (50605),

v.

HENNEPIN COUNTY, Respondent (50412) Appellant (50605),

State of Minnesota, Intervenor.

Nos. 50412, 50605.

Supreme Court of Minnesota.

Aug. 8, 1980.

Holmes & Graven, David L. Graven and Larry M. Wertheim, Minneapolis, for Ahrenholz, et al. in nos. 50412 and 50605.

Schmidt, Thompson & Thompson and Joe E. Thompson, Willmar, for Ahrenholz, et al. in nos. 50412 and 50605.

Mahoney, Dougherty & Mahoney and Thomas E. Dougherty, Minneapolis, for Hennepin County in nos. 50605 and 50412.

Thomas L. Johnson, County Atty., and Charles Hall, Asst. County Atty., Minneapolis, for Hennepin County in no. 50605.

Lindquist & Vennum, Edward J. Parker, and James P. McCarthy, Minneapolis, for Hennepin County in no. 50412.

Robert J. Alfton, Minneapolis City Atty., Minneapolis, for City of Minneapolis, amicus curiae.

Stanley G. Peskar, League of Minnesota Cities, St. Paul, amicus curiae.

WAHL, Justice.

A Hennepin County jury awarded damages of $428,000 to the plaintiffs in this case for the wrongful death of their one-month-old infant son, Nicholas, due to the admit-

ted negligence of the Hennepin County Medical Center. The district court denied Hennepin County's motion for a new trial but reduced the verdict to $100,000 plus costs. Both plaintiffs and defendants appeal. We affirm.

The following legal issues are raised by the appeal:

(1) whether the plaintiffs are estopped from obtaining more than $106,432 by failure to amend the prayer for relief in their complaint;

(2) whether the trial court erred in reducing the $428,000 verdict to $100,000, and whether the verdict as reduced was excessive;

(3) whether the liability limits provided for in Minn.Stat. § 466.04 (1978) are applicable to the operation of Hennepin County Medical Center;

(4) whether the monetary limits on recovery provided for in Minn.Stat. §§ 466.04 and 466.06 (1978) violate Equal Protection; and

(5) whether, if Minn.Stat. § 466.04 is unconstitutional or does not apply to the Hennepin County Medical Center, this court's holding to that effect should be prospective only.

Nicholas Ahrenholz was born at Hennepin County Medical Center on November 17, 1976. His parents, Donna and Merlen Ahrenholz, the plaintiffs in this action, were married in 1970 and had one other child, Michael, who was born August 18, 1975. Donna Ahrenholz suffers from diabetes mellitus, which causes severe complications with childbirth. She had come from the family's home in Clara City, Minnesota to the Hennepin County Medical Center for the birth of Nicholas. Both Michael and Nicholas were premature and had numerous problems shortly after birth. At the time of his death, many of Nicholas' problems had been resolved; the neonatology specialist who was responsible for his care stated at trial that Nicholas had a 95% chance of living as a healthy baby had the accident causing his death not occurred. His brother, Michael, is now a normal healthy boy.

Nicholas died on December 17, 1976, as a result of receiving an intravenous feeding intended for an adult but mislabeled as appropriate for an infant. Hennepin County Medical Center admitted liability.

The plaintiffs testified that each of them grew up in a close family and that they and their son, Michael, are very close. Their dream is to become farmers, but they are not presently doing any farming. Both parents, over objection, were allowed to explain what they felt a child's "advice," "comfort," "assistance," and "protection" meant to them as parents. Both plaintiffs have long-living relatives. Merlin Ahrenholz's life expectancy was 42.16 years at the time of the trial.

1. Defendant Hennepin County argues that since plaintiffs, in their complaint, requested only $10,000 in expenses and $100,000 in general damages and did not amend their complaint, they should be estopped from recovering more than the $6,432 stipulated as special damages and the $100,000 general damages requested. The County contends that it was prejudiced by plaintiffs' failure to amend their complaint, because it was "lulled into a false sense of security" and would have conducted a different defense of the case had it known plaintiffs sought $400,000 rather than $100,000.

The general rule is that the plaintiff's recovery is not limited to the amount stated in the complaint unless the defendant is prejudiced. *Young v. Hansen*, 296 Minn. 430, 436, 209 N.W.2d 392, 396 (1973). Hennepin County has introduced no evidence to show how it was prejudiced by the plaintiffs' failure to amend. Absent such evidence plaintiffs are not estopped from recovering more damages than they requested in their complaint.

2. The threshold issue in our further consideration of the case, the issue which could be dispositive, is whether the trial court erred in reducing the jury verdict of $428,000 to $100,000, and whether the verdict as reduced is excessive. Hennepin County argues that the $428,000 verdict

was excessive and caused by passion and prejudice resulting from the improper closing argument of plaintiffs. The County contends that plaintiffs improperly suggested the value of a human life as the measure of damages, improperly introduced a mathematical formula and hypothetical damage figures, and attempted to inflame the jury throughout the argument.

Minnesota Statutes § 573.02, subd. 1 (1978) provides that the recovery for wrongful death is "the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, * * *." Evidence to be considered in measuring damages for wrongful death includes the decedent's character, health, habits, talents, prospects, earnings, and parental contributions. *Sellnow v. Fahey*, 305 Minn. 375, 382–83, 233 N.W.2d 563, 568 (1975). In cases involving the death of children, factors which shed light on the amount of damages are the decedent's age, intelligence, academic achievement, wages earned, career prospects, and care and devotion to parents. The parents may be compensated for loss of advice, comfort, assistance, and protection which they could reasonably have expected if the child had lived. *Fussner v. Andert*, 261 Minn. 347, 113 N.W.2d 355 (1961). The deceased child's probable contributions to the parents may be considered in computing damages to the parents for loss of their child. *McCorkell v. City of Northfield*, 272 Minn. 24, 136 N.W.2d 840 (1965). Because the pecuniary loss sustained by parents for the wrongful death of a child cannot be accurately and precisely determined, the task is peculiarly one for the jury. *Sellnow v. Fahey*, 305 Minn. 375, 383, 233 N.W.2d 563, 568–69 (1975).

The proper measure of damages for wrongful death, then, is the pecuniary loss resulting from the death, not the value of a human life in the abstract. Minn.Stat. § 573.02; *Fussner v. Andert*, 261 Minn. 347, 113 N.W.2d 355 (1961). Plaintiffs' counsel repeatedly told the jury in his closing argument that their task was to determine the value of a human life. He also told them

numerous times, however, that they were to determine the pecuniary loss suffered by the parents, and attempted to explain the meaning of that term. The trial judge attempted to remedy any confusion created in the jurors' minds by instructing them: "In this case, you must determine the amount of money that will fairly compensate the next of kin for their pecuniary loss resulting from the death of Nicholas and not on the value of a life * * *."

Plaintiffs' counsel told the jury he would not recommend a specific figure as a measure of the plaintiffs' pecuniary loss. Later in his argument, however, he told them he would explain pecuniary loss to them by means of the following hypothetical question: If a machine, which could never be duplicated and which produced $10,000 a year were destroyed, how much would the owner of the machine have lost? Counsel answered his question by computing $10,000 times 42 years, the life expectancy of Mr. Ahrenholz. He then explained that a "human life is not a machine"; it has value beyond what any machine could have, and its value cannot be easily calculated. Hennepin County argues that plaintiffs' hypothetical was an improper use of a mathematical formula based on figures not supported by the record.

Using mathematical formulae for purely illustrative purposes in arguing damages for wrongful death is permissible, as long as the figures are supported by the evidence. *See Brabeck v. Chicago & Northwestern Ry. Co.*, 264 Minn. 160, 167, 117 N.W.2d 921, 926 (1962). Plaintiffs' counsel's use of a formula was for illustrative purposes. Even so, the jury apparently accepted the $10,000-per-year figure as reasonable and used it in computing the verdict. That is understandable, since in cases like this one involving the death of an infant, little evidence exists as to the decedent's character, health, and prospects for financial contribution to the parents. While "all verdicts attempting to compensate for the death of a minor child may be arbitrary attempts at a difficult, if not impossible, task," *Pehrson v. Kistner*, 301

Minn. 299, 303, 222 N.W.2d 334, 337 (1974), the jury may not base an award of substantial damages on speculation and conjecture. *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 399 (Minn.1977).

■ Plaintiffs' closing argument clearly influenced the size of the verdict in this case, but whether a new trial should be granted because of improper argument by counsel rests almost wholly within the discretion of the trial court. *Christy v. Saliterman*, 288 Minn. 144, 171, 179 N.W.2d 288, 305 (1970). The trial court found that the conduct of plaintiffs' counsel was not "irregular" and that his suggestion, for illustrative purposes, of $10,000 per year for the period of plaintiff's life · expectancy was alone "not a basis for reduction."

■ No award can be sustained, however, unless it is reasonable in light of the circumstances of the particular case. *Palmer v. Haluplzok*, 294 F.Supp. 489, 491 (D.Minn.1969). Generally, a verdict should not be justified or attacked by comparing it with verdicts approved or disapproved in other cases, or by referring to definite standards. *Brabeck v. Chicago & Northwestern Ry. Co.*, 264 Minn. 160, 165, 117 N.W.2d 921, 925 (1962); *Ahlstrom v. Minneapolis, St. Paul and Sault Ste. Marie Ry. Co.*, 244 Minn. 1, 26–27, 68 N.W.2d 873, 889 (1955). However, it is difficult to judge the reasonableness of a verdict for the death of an infant any other way.

Until recently, verdicts for the wrongful death of a child have been relatively low, with verdicts for the wrongful death of babies and young children generally smaller than verdicts for the wrongful death of older children. *See Palmer v. Haluplzok*, 294 F.Supp. at 492. The average verdict for the wrongful death of a male under the age of six, from 1969 to 1973, was $20,842; for a female under the age of six, $30,355; and for a miscarried or newborn baby, $19,-972. Jury Verdict Research Project, 2 Personal Injury Valuation Handbooks 434 (1974). More recent verdicts for the wrongful death of children, however, are substantially larger, with a great range of permissible verdicts. The following verdicts have

been found to be not excessive: *Metropolitan Dade County v. Dillon*, 305 So.2d 36 (Fla.Dist.Ct.App.1974) ($900,000, six-year-old girl killed by county garbage truck); *Woods v. Andersen*, 145 Ga.App. 492, 243 S.E.2d 748 (1978) ($155,000 six-year-old girl killed while riding bicycle); *Weaver v. Ford Motor Co.*, 382 F.Supp. 1068 (E.D.Pa.1974), aff'd mem. 515 F.2d 506 (3rd Cir. 1975) ($82,500, five-year-old girl fatally injured in accident involving defective van); *Anding v. Southwestern Insurance Co.*, 358 So.2d 690 (La.App.1978) ($75,000, five-year-old girl killed in automobile accident); *Cain v. Houston General Insurance Co.*, 327 So.2d 526 (La.App.1976) ($15,000 per parent per child for children, ages two and three, killed in a one-vehicle accident); *Polk v. Wiley*, 325 So.2d 658 (La.App.1975) ($80,000, only son of older parents with no prospects of having more children). *See* Annot., 49 A.L. R.3d 934 (Supp.1979).

■ Considering the verdict in light of Minn.Stat. § 573.02, subd. 1 (1978), the case-law interpreting the statute, and the evidence presented in this case, the trial court did not err in implicitly finding $428,000 to be excessive for the wrongful death of this one-month-old infant. Even without a finding of passion or prejudice, this court may reverse an excessive verdict where the jury unwittingly applied figures in a mathematical formula which were not supported by the evidence. *Thill v. Modern Erecting Co.*, 272 Minn. 217, 233, 136 N.W.2d 677, 688 (1965); *Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.*, 244 Minn. 1, 30, 68 N.W.2d 873, 891 (1955). The explicit holding of the trial court that the reduced verdict of $100,000 was not excessive should not be interfered with on review unless a clear abuse of discretion is shown. *Busch v. Busch Construction Co., Inc.*, 262 N.W.2d 377, 401 (Minn.1977). The trial court heard the evidence, including evidence of the close family relationship of the plaintiffs and their one other child and the fact that Mrs. Ahrenholz suffered from diabetes mellitus, which made the having of healthy children difficult and dangerous. We are reluctant to substitute our judgment for that of the

trial judge who found $100,000 to be adequate and not excessive. We affirm the trial court's determination.

Because of our disposition of the case, we need not address plaintiffs' arguments challenging the application and constitutionality of Minn.Stat. § 466.04 (1978).

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.

AMDAHL, J., not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.