## GERALD F. MALIK AND ANOTHER v. DONALD L. JOHNSON AND OTHERS.

219 N. W. 2d 631.

June 21, 1974—No. 44322.

*Maun, Hazel, Green, Hayes, Simon & Aretz, Merlyn C. Green,* and *Geoffrey P. Jarpe,* for appellants.

*Carroll, Cronan, Roth & Austin* and *Robert M. Austin,* for respondent Cates.

Heard before Otis, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Appeal from a judgment and from an order issued by the Hennepin County District Court denying plaintiffs' motion for a new trial. We affirm.

On June 29, 1969, an automobile collision occurred on Minnetonka Boulevard in the city of St. Louis Park. An automobile driven by defendant Roger Johnson crossed over the centerline into the path of an automobile driven by plaintiff Gerald Malik. The two vehicles collided head-on, injuring Gerald Malik and his wife, plaintiff Janis Malik, who was a passenger in her husband's automobile. Defendant Roger Johnson received minor injuries.

Prior to the accident, Roger Johnson, a minor, had illegally purchased 24 16-ounce cans of strong beer from defendant Wallace Cates, doing business as the Plymouth Liquor Store. At the time of the accident eight cans of this beer were in Roger Johnson's automobile. Roger Johnson testified that he had consumed one and a half cans of this beer at a party prior to the accident.

The Maliks brought action in district court to recover for injuries sustained in the accident. They alleged defendant Roger Johnson was negligent. Additionally, plaintiffs contended that defendant Cates illegally sold intoxicating liquor to defendant Roger Johnson, that Roger became intoxicated, and this intoxication was the cause of the accident and resulting injuries to plaintiffs.

Trial before a jury was held in district court. The jury returned a special verdict finding that (1) neither plaintiff Gerald Malik nor defendant Roger Johnson was negligent in the opera-

tion of their respective automobiles; (2) Roger Johnson was the owner of the vehicle he was driving at the time of the collision; (3) defendant Wallace Cates, doing business as Plymouth Liquor Store, made an illegal sale of intoxicating liquor to Roger Johnson; (4) Roger Johnson was not intoxicated at the time of the accident; and (5) the total damages sustained by plaintiffs as a result of the accident were $90,841.50.

Pursuant to a motion for amended findings or a new trial, the trial court amended the findings of the jury with regard to the negligence of Roger Johnson and found that he was negligent and that his negligence was a direct cause of the accident. These findings were substituted for the findings of the jury on these points. Judgment was then entered pursuant to these amended findings and conclusions of law. This appeal was taken from the judgment and from an order denying the motion for a new trial.

The principal issues raised on this appeal are:

1.  Did the trial court err in refusing to grant plaintiffs' motion for new trial on grounds that the trial court should have instructed the jury not only as to the legal definition of intoxication, but. also as to the *indicia* by which intoxication may be properly evidenced?

2.  Did the trial court commit reversible error in failing to sufficiently differentiate the various grounds upon which each defendant could be found liable for damages?

3.  Did the trial court err in instructing the jury not to draw unfavorable inferences against defendants for failure of defendants to call witnesses who could presumably testify as to defendant Johnson's alcohol consumption on the night of the accident and in refusing to allow plaintiffs' counsel to argue this inference to the jury?

4.  Did the trial court err in sustaining defendants' objections to plaintiffs' attempted use of beer cans or paper representations of beer cans for illustrative purposes in plaintiffs' closing argument to the jury?

## I.

With regard to plaintiffs' right to recovery against defendant Cates under Minn. St. 340.95, the trial court gave the following instructions:

"Now, one of the Defendants in this case is Wallace Cates doing business as the Plymouth Liquor Store. Plaintiffs claim that such Defendant violated a statute known as the Civil Damage Act.

"This statute provides that anyone whose person has been injured by an intoxicated person or by reason of that person's intoxication may recover any damages sustained from any person who by illegally selling, furnishing, or giving intoxicating beverages caused such intoxication.

"To recover under this statute Plaintiff must prove each of the following: 1. Defendant illegally sold intoxicating liquor to Roger Johnson.

"2. The liquor so sold caused the intoxication of Roger Johnson.

"3. As a result thereof Plaintiffs were injured by reason of the intoxication of Roger Johnson.

"Plaintiffs' claim against Wallace Cates doing business as Plymouth Liquor Store is not based on negligence. In determining whether Plaintiff's are entitled to recover under this statute and against said Defendant, Wallace Cates, you are not to consider the principles of negligence as defined elsewhere for you earlier in these instructions. Plaintiffs' right to recover under this statute is not dependent upon the finding of negligence on the part of the Defendant Wallace Cates doing business as Plymouth Liquor Store.

"*A person is intoxicated when as the result of drinking intoxicating liquor he has lost control to any extent of his mental or physical faculties.*" (Italics supplied.)

Plaintiffs contend that the trial court committed reversible error by refusing to give their requested instruction which included

not only the legal definition of intoxication (italicized above) but also the manner in which intoxication may be evidenced. This particular issue of whether or not it is prejudicial error to instruct the jury as to the indicia of intoxication in a claim under § 340.95 has not been previously considered by this court.

The general rule regarding the sufficiency of jury instructions is stated in Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. 2d 793, 798 (1954):

"* * * All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient. Usually it is preferable to give a general charge, if practicable, upon the whole law of the case rather than to run the risk of overemphasizing one side of the case or confusing the jury as is often done by giving requested instructions or particularizing upon specific items."

Plaintiffs place principal reliance on Hagen v. Snow, 244 Minn. 101, 106, 69 N. W. 2d 100, 103 (1955), which states:

"* * * It is well established that, 'as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made.' [Citations omitted.] Furthermore, 'even a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question.' [Citation omitted.]"

Plaintiffs are correct in their assertion that intoxication may be evidenced by nonexpert opinion based on "observation of the allegedly intoxicated party's appearance, breath, manner of walking or standing, and manner of speech." Trail v. Village of Elk River, 286 Minn. 380, 391, 175 N. W. 2d 916, 922 (1970).

While it is true that there was testimony in the record that defendant Roger Johnson exhibited some of the usual symptoms that could indicate intoxication at the scene of the accident, it is also true that some of those same symptoms could be evidence of injury. A police officer called to the scene specifically refused to render an opinion at trial as to whether Roger Johnson was intoxicated at the time of the accident.

The instruction given with reference to the evidence on the record follows the rule set forth in Cameron v. Evans, *supra*. It was well within the trial judge's discretion to conclude that the definition of intoxication provided in the instructions sufficiently and clearly apprised the jury of the applicable law. Perhaps the trial judge felt that the requested specific instruction would place undue emphasis on the testimony as to Johnson's condition at the accident scene in light of the other evidence relevant to the question of intoxication. The rule of Hagen v. Snow, *supra*, implies that a specific instruction is not mandatory unless "it *soundly* appears that such an instruction is needful to enable the jury to intelligently determine the question." Ibid. (Italics supplied.)

Even if in this case an instruction of the indicia by which intoxication may be evidenced would have been preferable, such omission is not necessarily prejudicial so as to constitute reversible error. Counsel for plaintiffs in his closing argument to the jury dwelt at some length with the testimony as to Johnson's condition at the scene of the accident. Counsel informed the jury that these symptoms indicated intoxication. In light of these remarks the instruction can hardly be deemed prejudicial.

## II.

Plaintiffs contend the trial court committed a "major" error in failing to sufficiently differentiate between the various grounds upon which each of the defendants could be found liable for damages.

Even though this issue is factually distinguishable from the previously discussed issue dealing with the instruction on the

definition of intoxication, the controlling legal concepts are the same. Plaintiffs cite Zurko v. Gilquist, 241 Minn. 1, 62 N. W. 2d 351 (1954), which holds that if as a whole the charge is likely to or reasonably does convey an erroneous understanding of the law to the jury, then reversal is required. Defendant Cates cites the rule of Cameron v. Evans, *supra,* which requires the charge to be viewed as a whole to determine whether it conveyed to the jury a clear and correct understanding of the law.

The precise issue can be thus restated: Did the charge as a whole convey to the jury a clear understanding of the grounds for recovery against *each* of the defendants? We think it did.

The court made specific instruction as to the grounds for recovery against each of the defendants in its discussion of liability. The court further instructed the jury as to the elements necessary for recovery under § 340.95. It is at least arguable that the jury understood that they could assess damages against defendant Cates if they found liability under § 340.95.

Perhaps more importantly, the jury was carefully instructed as to the manner in which they were to respond to special interrogatory number 9 dealing with damages. The form itself requires the jury to assess the damages sustained by plaintiffs *regardless* of the jury's findings on the questions relating to liability. In the instant case, the jury assessed the damages at over $90,000 even though they found that none of the defendants were liable. The theory of an independent damage assessment under special interrogatories is to avoid the error that plaintiffs contend was committed.

### III.

In final argument to the jury counsel for plaintiffs stated:

"I am going to suggest to you that circumstantial evidence includes what was not said as well as what was said, and I think these factors can be taken into account. I am going to remind you that of eight and I believe close friends of Roger's at this party, and the only person from that party who testified in this case was Roger—"

At this point the court sustained objection to this statement.

The court included the following instruction in its charge to the jury:

"Now, during the arguments certain comments were made by Plaintiffs' attorney as to the failure of the Defendants to produce eight certain witnesses who were at the party attended by the Defendant Roger Johnson. The Court instructs you that on the evidence in this case that these eight persons could have been equally subpoenaed by Plaintiff or by the Defendant if they so desired and that there is no evidence that any of these eight persons were within the Defendants' *power* to produce." (Italics supplied.)

Plaintiffs argue that the jury should have been allowed to draw an adverse inference against defendants for failing to offer testimony of these eight persons who were at the party with Roger Johnson on the night of the accident. Thus, plaintiffs urge the court erred in refusing to allow them to argue this inference and, further, that the above-quoted instruction was erroneous.

Plaintiffs argue that this inference is most relevant to the issue of Roger Johnson's intoxication and is supported by the record. Defendants rebutted with Roger's testimony that he was *not* intoxicated and had consumed only one and a half cans of beer prior to the accident. The adverse inference that plaintiffs advance would logically tend to mitigate the credibility of Roger's testimony.

Plaintiffs cite M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801 (1933). In this case it was held that the jury could draw an adverse inference against plaintiff for his failure to secure the testimony of his agent. This agent, in the court's opinion, "was not an available witness for the defendant." The court went on to state:

"So the law has come to be that an unexplained failure of a party to produce as a witness a person who knew the facts and who *presumably would testify favorably to him* justifies an un-

favorable jury inference." 190 Minn. 62, 250 N. W. 803. (Italics supplied.)

Plaintiffs also cite Zuber v. Northern Pacific Ry. Co. 246 Minn. 157, 74 N. W. 2d 641 (1956). In that case this court held that the trial court did not err in failing to instruct the jury as to the unfavorable inference against defendant for his failure to call a *former employee* to testify. (However, as plaintiffs point out, the trial court did allow plaintiffs' counsel to argue the unfavorable inference even though no instruction was given.) The opinion went on to state that the unfavorable inference arises from the failure of a party to produce a witness "who is apparently within the power of a party to produce, and would more naturally favor that party. In other words, the basis for the inference is found in circumstances which make it appear natural for the party to produce the witness, and if not produced, the failure to produce the witness may indicate fear that his testimony would be adverse." 246 Minn. 169, 74 N. W. 2d 651.

Plaintiffs have the burden of proof and have failed to show that the witnesses at the party were so close to defendant Roger Johnson as to fall into the "natural witness" category. Moreover, the main defense against intoxication fell to the liquor dealer, not the minor, and there is no claim that the missing witnesses were close to the Plymouth Liquor Store.

Finally, it is difficult to imagine plaintiffs, in their investigation, not interviewing these witnesses and being aware of what they would say if called. Thus, it could be argued a counter inference could be drawn, namely, they would testify adversely to plaintiffs. The trial court was correct in refusing to allow this line of argument in view of the fact plaintiffs wholly failed to sustain their burden of proof to allow such argument.

## IV.

Defendant Roger Johnson testified that he had purchased 24 16-ounce cans of Schlitz strong beer on the day of the accident. He further testified that he had personally consumed one and

a half cans of this beer and had eight cans in his possession when the accident occurred.

During his closing argument plaintiffs' counsel attempted to place in view of the jury 24 16-ounce cans of Schlitz strong beer in order to illustrate the number of cans of beer that were unaccounted for by this testimony. The court sustained defendants' objection to this procedure and admonished plaintiffs' counsel for his attempt to use it.

Plaintiffs' counsel then announced that he would propose to lay out 24 circular pieces of paper in view of the jury as representing simply the number of beer cans referred to in the testimony and to use them for the same illustrative purpose as the attempted use of the 24 cans of beer. Defendant's counsel again objected. After a discussion at the bench, the court, in the hearing of the jury, ordered plaintiffs' counsel to remove the papers from the view of the jury and desist from any further proceedings along those lines. Counsel for plaintiffs had neither placed the cans of beer or the pieces of paper in evidence, nor had he given prior notice of his intention to use these items in his closing argument.

Plaintiffs contend that the trial court committed prejudicial error in refusing to allow the use of these items in closing argument and that this refusal prompted the jury to infer that they were not to consider the fact that 14 cans of beer were unaccounted for in the testimony.

While it is true that counsel are entitled wide latitude in their final arguments to the jury, Connolly v. The Nicollet Hotel, 258 Minn. 405, 419, 104 N. W. 2d 721, 732 (1960), citing Hardy v. Anderson, 241 Minn. 478, 63 N. W. 2d 814 (1954), this wide latitude is not without limitations. See, Maher v. Roisner, 239 Minn. 115, 57 N. W. 2d 810, 37 A. L. R. 2d 658 (1953).

Defendant Cates cites Parrucci v. Kruse, 12 Ill. App. 2d 30, 138 N. E. 2d 91 (1956), an automobile collision case in which defendant testified that he had consumed 8 or 10 7-ounce bottles of beer prior to the accident. In closing argument plaintiffs'

counsel exhibited to the jury 9 bottles of beer identical in size and brand to those mentioned in defendant's testimony. The court upheld the trial judge's action in sustaining an objection to the exhibition of the beer bottles to the jury on grounds of extreme prejudice.

In Brabeck v. Chicago & North Western Ry. Co. 264 Minn. 160, 168, 117 N. W. 2d 921, 926 (1962), this court stated:

"* * * [W]e hold that it is not improper in closing argument to use previously prepared placards, provided they contain only factual statements supported by the evidence and are *not argumentative in nature*. Just where evidence ends and argument begins is a matter for the trial court to determine within its *broad discretion* in each case. * * * However, in order to obviate in the future the display of charts or placards which are not supported by the evidence or tend to be argumentative, we hold that the proposed material should be submitted to the court and to opposing counsel in chambers *prior* to argument whenever the use of such *visual aids* is anticipated." (Italics supplied.)

The above-quoted language sets forth a clear requirement that visual aids used in final argument must be submitted to the court for approval. The rule speaks in terms of *visual aids,* thus including beer cans and paper representations of beer cans. Since counsel for plaintiffs did not seek this prior approval, the trial judge properly sustained objection to the display of the items in question.

Further, Brabeck vests in the trial court *"broad discretion"* in ruling on the use of visual aids in closing argument. "A reviewing court is charged with the duty to view the record most favorably to sustain an order involving the exercise of discretionary authority by a trial court." Electro Nuclear Systems Corp. v. Telex Corp. 295 Minn. 576, 205 N. W. 2d 127, 128 (1973).

Numerous other claims of error were raised by plaintiffs in which we find no merit.

The trial court is affirmed.