**Charlene PAULSON, individually and as mother and natural guardian of minors Peter Paulson and Alex Paulson, Respondent,**

v.

**LAPA, INC., d/b/a Glacial Trail Club, Appellant.**

**No. C8-89-1313.**

Court of Appeals of Minnesota.

Jan. 23, 1990.

Review Denied March 22, 1990.

Brian Wojtalewicz, Wojtalewicz, Hohman & Schoep, Chartered, Appleton, for respondent.

Rolf E. Sonnesyn, Foster, Waldeck & Lind, Ltd., Minneapolis, for appellant.

Heard, considered and decided by CRIPPEN, P.J. and KLAPHAKE and FLEMING *, JJ.

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

WILLIAM J. FLEMING, Judge.

Respondent Charlene Paulson, widow of decedent Wayne Paulson, brought a dram shop action against appellant Lapa, Inc., d/b/a Glacial Trail Club (the club) for damages resulting from the death of her husband in a one-car automobile accident.

Following a two-day trial, the jury found that the club had sold alcoholic beverages to decedent after he was obviously intoxicated; that the sale of alcoholic beverages to decedent caused or contributed to his intoxication; that the sale was a direct cause of his death; and that the percentage of fault attributable to the club for decedent's injuries was 50%. The jury also found that decedent was negligent, and that the percentage of fault attributable to him was also 50%.

The jury awarded $110,000 for loss of support, and $90,000 for past and future pecuniary loss. The $90,000 for pecuniary loss was reduced by decedent's percentage of fault, resulting in a total award of $155,-000, plus interest. Judgment was entered in favor of decedent's widow and two young sons for $159,848.83. The club appeals from the judgment entered pursuant to the jury verdict.

Respondent Charlene Paulson also filed a notice of review with this court pursuant to Minn.R.Civ.App.P. 106, seeking review of the trial court's imputation of the negligence of decedent to the surviving family members.

We affirm the jury's award of damages against the club. We hold that the trial court did not abuse its discretion in rejecting appellant's proposed jury instruction regarding the dram shop's obligation to determine the extent of decedent's intoxication. We hold that the trial court was correct in refusing to reduce the jury's award for loss of support damages by the percentage of decedent's fault. We reverse the trial court, however, on the issue of reducing the amount awarded to the non-negligent dependents for pecuniary

damage by the percentage of decedent's comparative fault.

## FACTS

Wayne Paulson was last seen alive on the evening of Friday, August 23, 1985, at the Glacial Trail Club. He consumed an unknown number of strong beers at the club, and left the club sometime after 10:30 p.m. He did not arrive home after leaving the club, and his body was not found until the following Monday, August 26, floating in a "slough" or swampy area located on a direct route between the club and his home. His car left the road and came to rest in 7–10 feet of water; his body was discovered approximately 20–25 feet from the edge of the slough.

Paulson's widow, Charlene Paulson, brought a dram shop action against the club on behalf of herself and her two sons. Pre-trial summary judgment motions were denied, and the matter was tried before a jury in Swift County beginning on May 16, 1989.

Plaintiffs called a number of witnesses to establish that Wayne Paulson was "obviously intoxicated" at the time that he was being served beers at the club. The club also called a number of witnesses who had seen Paulson at the club. There was conflicting testimony regarding the extent of Paulson's intoxication and the time that he left the club that evening.

The deputy county coroner, Dr. Lyle Munneke, testified by deposition that when Paulson's body was discovered, it had been in the water at least 24 hours, and probably longer. A forensic toxicologist also testified to the blood alcohol level in a sample taken from Paulson's body (.20), noting that the blood alcohol level would remain constant once death occurred, since the liver would no longer operate to metabolize the alcohol.

In addition to trying to establish that Paulson was not obviously intoxicated while at the club, the defense was based on the theory that Paulson may have gone somewhere else after leaving the club, and that he drank again between Saturday morning and Sunday afternoon, and drove his car into the slough on the way home from this other location. The only evidence that tended to support this theory was a phone call which Charlene Paulson received at 10:00 p.m. on Saturday night, before her husband's body had been found. The caller stayed on the line for about a minute, but did not say anything. Mrs. Paulson, thinking it might be her missing husband, spoke to the caller as if it was her husband, and pleaded with him to come home. The caller hung up without saying anything, however, and there was no other evidence to establish the identity of the "phantom caller." No other evidence was presented by the defense to support the theory that Paulson had been drinking somewhere else before the accident that resulted in his death.

By special verdict, the jury found that the club had sold alcoholic beverages to Wayne Paulson when he was obviously intoxicated; that this sale caused or contributed to his intoxication; that the sale was a direct cause of his death; that Paulson himself was negligent; and that his own negligence was also a direct cause of his death. The jury attributed 50% of the total fault to Wayne Paulson and 50% to the club. They awarded $110,000 for loss of means of support, and $90,000 for pecuniary loss.

The trial judge reduced the pecuniary loss award by the percentage of Wayne Paulson's fault, resulting in a total award of $155,000 plus interest. The court denied the club's motion for judgment notwithstanding the verdict and their request for a new trial, as well as Charlene Paulson's motion to figure damages without any imputation of fault on the pecuniary loss. Judgment was entered on the jury award, and the club filed its notice of appeal on June 26, 1989.

## ISSUES

1. Did the trial court err in refusing to give a curative instruction on the issue of the club's obligation to take affirmative action to determine the extent of decedent's intoxication?

2. Did the trial court err in refusing to reduce the amount awarded for loss of support by the percentage of decedent's fault?

3. Did the trial court err in applying the comparative fault statute to reduce the amount awarded for pecuniary damages by the percentage of decedent's fault?

## ANALYSIS

### I.

■ Appellant's first argument on appeal is that a new trial should be granted because the trial court failed to give a curative instruction in response to what appellant claims was an "erroneous statement of the law" by counsel for respondent Charlene Paulson.

In his opening statement, and again in his closing argument, counsel for respondent highlighted the testimony of Faye Sandvig, the club's manager, who was tending bar on the evening of August 23, 1985. Essentially, Sandvig testified that although she served beer to Wayne Paulson, she did not know how many she had served him, nor did she observe his condition as he sat at the bar. She stated that she did not look into Paulson's eyes, nor did she pay attention to his facial expression.

In closing arguments, respondent's counsel alluded to Sandvig's testimony several times, emphasizing how "unfair" it would be to allow the club to escape liability by what counsel characterized as an affirmative choice to ignore the condition of patrons.

Counsel for the club requested a "curative instruction" to the effect that the club's employees had no affirmative obligation to determine the extent of a patron's intoxication under the "obvious intoxication" standard. The trial court refused to give the requested instruction. The club argues that counsel for respondents incorrectly stated the law on the obligation of the liquor vendor to observe the condition of patrons, and that these statements implied that Sandvig was negligent in not taking some affirmative action to determine the level of Paulson's intoxication.

The court's failure to give a curative instruction on this issue, the club contends, left the jury with "an erroneous impression of the law" which resulted in prejudice to the club, therefore requiring that a new trial be granted on the liability question.

■ Upon review, the instructions of the trial court must be viewed in their entirety from a practical and common sense point of view. *Cameron v. Evans,* 241 Minn. 200, 208, 62 N.W.2d 793, 798–99 (1954). The trial court is allowed considerable latitude in the language used in instructions, and a new trial will not be granted when they fairly and correctly state the applicable law. *Id.*

■ All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient. *Id.*

■ It is well established that correction of any alleged misconception which the jury might have gained from the arguments of counsel by further court instructions is a matter that rests largely in the discretion of the trial court. *McCorkell v. City of Northfield,* 272 Minn. 24, 32–33, 136 N.W.2d 840, 845–46 (1965).

■ The granting of a motion for a new trial on the ground of erroneous instruction largely rests in the sound discretion of the trial court, and its decision will not be reversed on appeal unless there has been a clear abuse of that discretion. *Lindstrom v. Yellow Taxi Company of Minneapolis,* 298 Minn. 224, 230, 214 N.W.2d 672, 677 (1974); *Jewett v. Deutsch,* 437 N.W.2d 717, 721 (Minn.Ct.App.1989).

■ A seller of intoxicating liquor does not have an affirmative duty to carefully scrutinize patrons who drink to excess on the seller's premises. *Knudsen v. Peickert,* 301 Minn. 287, 290, 221 N.W.2d 785, 787 (1974). Under the current law, the seller is only required to notice conduct which obviously exhibits intoxication. *Id.*

■ The standard for determining whether a person is obviously intoxicated is whether the seller, using reasonable powers of observation, can see or should see that the buyer is intoxicated. *Strand v. Village of Watson*, 245 Minn. 414, 422, 72 N.W.2d 609, 615 (1955); *Gutwein v. Edwards*, 419 N.W.2d 809, 811 (Minn.Ct.App. 1988).

Appellant argues that the trial court's instruction should have indicated that employees of the club had no affirmative obligation to determine the level of Paulson's intoxication. Under the *Strand* standard, however, the seller is at least required to use "reasonable powers of observation" to see if a patron is intoxicated. This is not the same as an "affirmative obligation to determine the level of a patron's intoxication."

■ A requested specific instruction is not mandatory unless it soundly appears that such an instruction is needed to enable the jury to intelligently determine the question. *Malik v. Johnson*, 300 Minn. 252, 258, 219 N.W.2d 631, 635 (1974). In this case, there was overwhelming evidence of Paulson's intoxication. Furthermore, although the trial court refused to give the requested instruction, counsel for the club noted in his closing argument that Faye Sandvig had no affirmative obligation "to do some sort of sobriety test on her patrons."

Appellant was not prejudiced by the trial court's refusal to give the requested curative instruction. Viewing the charge to the jury as a whole, it appears that the instructions given did convey to the jury a clear and correct understanding of the law. The trial· court did not abuse its discretion in refusing to give the requested "curative" instruction.

## II.

■ Both appellant and respondent challenge the trial court's application of the comparative fault statute, Minn.Stat. § 604.01 (1988), to the jury's award. This case was tried under the dram shop statute as revised by the Minnesota Legislature in 1985. This court determined, in *Kuiawin-*

*ski v. Palm Garden Bar*, 392 N.W.2d 899 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Oct. 29, 1986), that the revisor of statutes had erred in codifying the 1985 amendments to the dram shop act. In *Palm Garden Bar*, we held that the following version of Minn.Stat. § 340A.801 was consistent with the intent of the 1985 Legislature.

> Subd. 1. Right of action. A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages. All damages recovered by a minor under this section must be paid either to the minor or to the minor's parent, guardian, or next friend as the court directs.

> Subd. 2. Actions. All suits for damages under this section must be by civil action in a court of this state having jurisdiction.

> Subd. 3. Comparative negligence. Actions under this section, *except for actions for injury to person, property or means of support brought by a spouse, child, parent, guardian, or other dependent of an intoxicated person* are governed by section 604.01 [the comparative fault statute].

(Emphasis added.) The trial court interpreted the underlined portion of the statute to require application of comparative fault to the jury's award of pecuniary damages, but not to the award for loss of means of support. Appellant challenges the trial court's refusal to apply comparative fault to the loss of support damages, contending that the entire jury award should have been reduced by the percentage of Wayne Paulson's fault (50%). Respondent contends that none of the damages awarded by the jury should have been reduced by the percentage of Wayne Paulson's fault, and that the "imputation of fault" to the non-negligent survivors is contrary to the

express language of the comparative fault statute.

Minn.Stat. § 604.01 (1988) provides in pertinent part as follows:

Subdivision 1. Scope of application. Contributory fault shall not bar recovery in an action by any person or the person's legal representative to recover damages for fault resulting in death or in injury to person or property, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the person recovering. The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party; and the court shall then reduce the amount of damages in proportion to the amount of fault attributable to the person recovering.

Subd. 1a. Fault. "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. * * *

This is substantially the same version of the comparative fault statute that was in effect at the time of Wayne Paulson's death.

The club argues that the *Palm Garden Bar* statute is violative of its equal protection and due process rights in providing the exception to the application of the comparative fault statute for "actions for injury to person, property or means of support brought by a spouse, child, parent, guardian, or other dependent of an intoxicated person."

We note initially that the dram shop act has been amended since 1985, and that the current version of the statute does not contain the exception in question. Neither side has challenged the applicability of the *Palm Garden Bar* version of the act to this case, however, and our review is therefore limited to the statute as it existed at the time of Wayne Paulson's death. Sub-

sequent revisions have not "clearly and manifestly" indicated that retroactive application was intended by the legislature. *See AMCO Insurance Co. v. Lang*, 420 N.W.2d 895, 898 (Minn.1988); Minn.Stat. § 645.21 (1988).

### 1. Appellant's Equal Protection Argument

■ It is an elementary doctrine of constitutional law that one who invokes the power of the court to declare a statute unconstitutional must be able to show not only that the statute is invalid but that the person has sustained or is in immediate danger of sustaining some direct injury resulting from its enforcement and not merely that the person suffers in some indefinite way in common with people generally. *Lott v. Davidson*, 261 Minn. 130, 143, 109 N.W.2d 336, 345 (1961); *In re Welfare of A.K.K.*, 356 N.W.2d 337, 343 (Minn.Ct.App.1984).

■ Appellant is a liquor vendor. It must, therefore, establish that enforcement of the statute in question will result in direct injury to appellant *as a liquor vendor*. Appellant's arguments in its brief concerning denial of equal protection to intoxicated persons and/or their dependents as a result of "the inequity of the [*Palm Garden Bar*] statute" do not present a justiciable controversy. Appellant lacks standing to raise this issue on behalf of these individuals.

### 2. Appellant's Due Process Argument

■ Where an economic regulation is involved, due process requires that legislative enactments not be arbitrary or capricious; or, stated differently, that they be a reasonable means to a permissible objective. Due process demands only that (1) the act serve to promote a public purpose; (2) that it not be an unreasonable, arbitrary or capricious interference, and (3) that the means chosen bear a rational relation to the public purpose sought to be served. *Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.1979).

The crux of appellant's due process argument is that the *Palm Garden Bar* statute

limits the "right" to application of comparative fault without providing any substitute. Appellant cites no authority for the proposition that application of comparative fault to the surviving dependents on every aspect of damages is a "right" which liquor vendors have previously possessed.

█ The threshold determination in a due process claim is whether the interest allegedly interfered with rises to the level of a constitutionally protected "liberty" or "property" interest. *AFSCME Councils 6, 14, 65 and 96 v. Sundquist*, 338 N.W.2d 560, 574 (Minn.1983). Appellant liquor vendor has no vested right to application of the comparative fault statute to all aspects of a dram shop award. The extent of application of comparative fault to the various aspects of such an award is a determination which the legislature has the authority to make. The fact that the legislature may subsequently have made a determination different from that of the statute in effect at the time of Wayne Paulson's death does not mean that the previous determination was unconstitutional.

3. Appellants' "Legislative Intent" Argument

Appellant argues that the court's interpretation of Minn.Stat. § 340A.801 in *Palm Garden Bar* was "contrary to legislative intent." Appellant provides no authority for this claim, however, other than speculation based on subsequent acts of the legislature.

In 1985, the legislature amended the dram shop statutes. These various amendments are chronicled at length in the *Palm Garden Bar* decision. The result of these actions, in spite of an error made by the revisor when the amendments were codified (*see Palm Garden Bar*, 392 N.W.2d at 903), was to expand the application of comparative fault to include pecuniary losses—but not loss of means of support—even if the claim was brought by "a spouse, child, parent, guardian, or other dependent." This court expressly held that the language of subdivision 3 of the *Palm Garden Bar* statute, was "consistent with what the legislature intended." *Id*, 392 N.W.2d at 903.

Appellant has presented no evidence to substantiate the claim that the *Palm Garden Bar* statute was contrary to the intent of the legislature in 1985. Subsequent revisions of the dram shop act reflect new policy judgments made at subsequent legislative sessions, and appellant's reference to the legislative history of the 1987 revision of the dram shop act does not establish that the intent of the *1985* legislature was contrary to the statute approved by this court in *Palm Garden Bar*.

### III.

█ By separate notice of review, respondent raises the issue of whether the trial court erred in applying Wayne Paulson's comparative fault to reduce the amount awarded by the jury for "pecuniary damages." Respondent argues that the dram shop act and the comparative negligence statute do not allow for the imputation of the negligence of decedent to his surviving. dependents.

The *Palm Garden Bar* statute provides:

Subdivision 1. Right of action. A spouse, child, parent, guardian, employer, or other *person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name* for all damages sustained against a person who caused the intoxication by illegally selling alcoholic beverages.  * * *

\*  \*  \*  \*  \*  \*

Subd. 3. Comparative negligence. Actions under this section, except· for actions for injury to person, property or means of support brought by a spouse, child, parent, guardian, or other dependent of an intoxicated person *are gov-. erned by section 604.01.*

Minn.Stat. § 340A.801 (1985) (emphasis added).

Charlene Paulson and her children are clearly "person[s] injured in person, property, or means of support" by the intoxication of another person. They are also persons who have incurred other pecuniary

loss by the intoxication of another person. They therefore have a right of action *in their own names* for *all damages sustained*, which right of action applies against the person who caused the intoxication (i.e., appellant club).

Subdivision 3 of the statute qualifies the legislative grant of a right of action under subdivision 1. Such actions are "governed by section 604.01," the comparative fault statute. An exception is provided for "actions for injury to person, property, or means of support brought by a spouse, child, parent, guardian or other dependent of an intoxicated person." Thus, employers or other persons not within the excepted categories have a right of action "for injury to person, property or means of support," but such actions *are* "governed by section 604.01." Also governed by section 604.01, under the express language of the statute, are *all actions* for "other pecuniary loss," by whomever incurred.

Thus, the trial court was unquestionably correct in excluding the loss of support award from the comparative negligence provision of subdivision 3. Only the pecuniary loss award was subject to subdivision 3, and therefore "governed by" the comparative fault statute.

The more difficult question is what the legislature intended when it declared that all actions for pecuniary loss under the dram shop act were "governed by" the comparative fault statute. When construing statutes, we must ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1988). When the words of a law in their application to an existing situation are clear and free from ambiguity, the letter of the law may not be disregarded by this court under the pretext of pursuing the spirit. *Id.*

Words and phrases are to be construed according to their common and approved usage. Minn.Stat. § 645.08(1) (1988). In legal terms, to "govern" means

> to direct and control the actions or conduct of, either by established laws or by arbitrary will; to direct and control, rule or regulate, by authority. To be a rule, precedent, law or deciding principle for.

*Black's Law Dictionary* 354 (Abridged 5th ed. 1983).

In applying the comparative negligence of Wayne Paulson to reduce the award for pecuniary loss to Charlene Paulson and the two children, the trial court in effect determined that the phrase "governed by section 604.01" in the dram shop statute meant that comparative fault was to be applied to all pecuniary loss awards, *regardless of the status of the person to whom the award was made*. We do not believe that such an expansive interpretation of this phrase is warranted in light of the express language and the underlying purpose of the comparative fault statute.

Minn.Stat. § 604.01 allows recovery "in an action by any person or the person's legal representative * * * for fault resulting in death or in injury to person or property, if the contributing fault was not greater than the fault of the person against whom recovery is sought * * *." Where contributory fault is found, the statute requires that "any damages allowed shall be diminished in proportion to *the amount of fault attributable to the person recovering.*" *Id.* (emphasis added).

"Fault" is defined by the statute to include "acts or omissions that are in any measure negligent or reckless toward the person or property of that actor or others * * *." *Id.*, subd. 1a. Thus, the statute requires that damages allowed be diminished in proportion to "the amount of acts or omissions that are in any measure negligent or reckless" which are "attributable to the person recovering."

In this case, the persons recovering are decedent's widow and children. The dram shop action was brought in their own names, to recover damages that they sustained as a result of the club's illegal sale of alcoholic beverages to Wayne Paulson. The supreme court has made it clear that neither the intoxicated person himself, nor anyone who actively participates in furnishing alcohol to the intoxicated person, may recover under the dram shop act. *See Herrly v. Muzik*, 374 N.W.2d 275 (Minn. 1985); *Hannah v. Chmielewski, Inc.*, 323

N.W.2d 781 (Minn.1982); *Jones v. Fisher,* 309 N.W.2d 726 (Minn.1981).

Thus, in this dram shop action, the dependent's claim is not based on any action that Wayne Paulson would have had against the vendor had he survived. As the supreme court noted in *Hannah,* 323 N.W.2d at 782, the language of the dram shop act

is in direct contrast to the wrongful death statute which allows a trustee to maintain an action "if the decedent might have maintained an action, had he lived." Minn.Stat. § 573.02 (1980). In the latter statute, the trustee's action is clearly dependent upon the decedent's right to maintain the action. *Such is not the case with the Dram Shop Act.*

(Emphasis added.)

The spouse of an intoxicated person who is injured may recover under the dram shop act because he or she is viewed as an innocent third party who did nothing to contribute to the injury. *Id.,* 323 N.W.2d at 783 (citing *Jones v. Fisher,* 309 N.W.2d at 728.) Charlene Paulson and the surviving children are innocent third parties who did nothing to contribute to Wayne Paulson's death. They did not perform any "acts or omissions that are in any measure negligent or reckless" relative to Wayne Paulson's death. Under the dram shop act, they—and not Wayne Paulson—are the "person[s] recovering" damages. Thus, under the plain language of the comparative fault statute, their damages are not subject to reduction.

In this case, the amount of acts or omissions that are in any measure negligent or reckless which are attributable to the persons recovering is zero. Therefore, the trial court erred in reducing the pecuniary damages awarded by the jury to the surviving spouse and dependents.

We must presume, in ascertaining the intention of the legislature, that it intends the entire statute to be effective and certain. Thus, we must determine whether there is any set of circumstances under which the *Palm Garden Bar* statute's comparative negligence provision can be applied to a pecuniary damages award to "a spouse, child, parent, guardian or other dependent of an intoxicated person." If no such circumstances exist, then the exception in the comparative fault provision of the statute for damages for loss of means of support has no practical effect.

In fact, there are a number of possible circumstances under which the acts or omissions of a spouse, child, parent, guardian, or other dependent of an intoxicated person could directly contribute to the injury to the intoxicated person. If, for example, the spouse of an intoxicated person committed some intervening negligent or reckless act (such as grabbing the steering wheel, or otherwise disturbing the intoxicated driver), this negligence or recklessness could act to reduce the pecuniary damages awarded to the spouse.

In effect, the *Palm Garden Bar* statute provides for absolute liability of the vendor for the entire amount of damages awarded to a spouse, child, parent, guardian or other dependent of an intoxicated person, with the exception that the comparative fault *of these persons* shall be applied to reduce the amount of pecuniary damages they can collect. Thus, dependents of intoxicated persons cannot have their loss of support damages award reduced in any event, and their pecuniary damages award is subject to reduction only to the extent that *their own negligence* contributed to the loss.

In *Pautz v. Cal–Ros, Inc.,* 340 N.W.2d 338, 340 (Minn.1983), the supreme court recognized that

[t]o allow the liquor vendor contribution from the intoxicated person when that person's family is suing for loss of support would defeat the very purpose of the action. It makes no sense to create a remedy to compensate a family for support lost by reason of injury to the breadwinner and then to reduce that compensation because the breadwinner was at fault.

Thus, the "strict liability" of the vendor for loss of support damages *regardless* of the negligence of the spouse, child, etc. under the *Palm Garden Bar* statute is consistent with the legislative purpose of the dram shop act to penalize the illegal sale of li-

quor and to provide a remedy to those damaged by the illegal sale. *Pautz*, 340 N.W.2d at 340–41. The legislature could reasonably have determined that comparative fault should not be applied to reduce awards for loss of means of support even where the dependent/claimant was actually negligent, because to allow such reduction would result in potential dependence on public assistance. In the case of awards for pecuniary loss where the dependent/claimant was actually negligent, no such dependence is likely to result from reduction of these damages by the percentage of the dependent/claimant's own fault.

As an error correcting body it is our duty to effectuate the intent of the legislature where that intent is apparent from the statutory language. If the legislature desires to have the comparative fault *of the intoxicated person* imputed to non-negligent dependents, it must make this explicit. As the statute now reads, comparative fault may be applied to reduce an award only where it is established that the *person recovering* (*not* the intoxicated person) performed some act or omission that was in any measure negligent or reckless.

### DECISION

We hold that the trial court correctly refused appellant's request for a "curative instruction" on the issue of the dram shop's obligation to determine the extent of decedent's intoxication. We also affirm the trial court's refusal to apply decedent's comparative fault to reduce the damages awarded for loss of support.

We reverse the trial court, however, on the issue of application of decedent's comparative fault to reduce the pecuniary damages awarded to the non-negligent dependents. We hold that the applicable statutes do not allow the imputation of negligence of an intoxicated person, to whom alcoholic beverages are illegally sold, to persons who have a right of action in their own name under the dram shop act. Only the negligence which is *attributable to the person recovering* may be applied to reduce damages awarded under the comparative fault provision, Minn.Stat. § 604.01.

Affirmed in part, reversed in part, and remanded.

CRIPPEN, J., filed a specially concurring opinion.

CRIPPEN, Judge, concurring specially.

I concur in our decision, save only as the discussion of Issue II and the award of pecuniary damages would be altered by my earlier expression of opinion on the content of 1985 legislative enactments. *See Kuiawinski v. Palm Garden Bar,* 392 N.W.2d 899, 904 (Crippen, J., dissenting), *pet. for rev. denied* (Minn. Oct. 29, 1986).