James O'NEIL, et al., Respondents,

v.

**WELLS CONCRETE PRODUCTS COMPANY, Defendant and Third-Party Plaintiff, Appellant,**

v.

**BOR–SON CONSTRUCTION, INC., Third-Party Defendant, Respondent.**

No. C0–91–883.

Court of Appeals of Minnesota.

Nov. 19, 1991.

Review Denied Jan. 17, 1992.

Sharon L. Van Dyck, Michael A. Zimmer, Schwebel, Goetz & Sieben, P.A., Minneapolis, for James O'Neil.

Henry A. Cousineau, Jr., Mark A. Gwin, Cousineau, McGuire & Anderson, Minneapolis, for Wells Concrete Products Co.

Larry J. Peterson, St. Paul, for Bor–Son Const., Inc.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY, JJ.

## OPINION

DAVIES, Judge.

Appellant challenges the trial court's admission of testimony regarding OSHA requirements as evidence of negligence, denial of a jury instruction on superseding cause, and refusal to grant JNOV or a new trial. Respondents challenge the trial court's decision to reduce an award for consortium by the percentage of the injured party's fault. We affirm.

## FACTS

Appellant Wells Concrete, as a subcontractor for Bor–Son Construction, manufactured and installed a roof over the swimming pool in the Edinborough enclosed park project in Edina. The roof panels were manufactured and installed with an opening for the placement of equipment for heating, ventilation, air conditioning or the like. The opening was five feet by two feet, four inches.

Testimony at trial indicated Occupational Safety and Health Administration (OSHA) regulations require that such holes be covered and the covers be fixed in place. Testimony also indicated that it was the custom and practice in the trade to put fixed covers on hazardous holes. Minnesota OSHA provides that covers should also be marked with a warning. Wells employees testified, however, that they customarily covered such holes with a loose piece of plywood or with a pallet.

Respondent O'Neil testified that, when he chose to lay out an arch on the roof, he began to clear away the small amount of debris lying about so the tape measure would not catch in it. When removing a full sheet of plywood lying on the roof, O'Neil did not first look beneath it. He took one step in lifting and turning the plywood for removal and fell 33 feet to the concrete below.

According to his treating physician, O'Neil has suffered a 95 percent permanent, partial disability to his left arm and a 15 percent permanent, partial disability to his back and pelvis.

The jury found Wells to be 80 percent, Bor–Son Construction 15 percent, and O'Neil five percent responsible.

### ISSUES

1. Did the trial court err in allowing testimony regarding OSHA regulations and in instructing the jury on OSHA regulations?

2. Did the trial court err in reducing Janis O'Neil's damage award for loss of consortium by her husband's percentage of fault?

3. Did the trial court err in denying appellant's request for a jury instruction on superseding cause?

4. Did the trial court err in denying appellant's motion for JNOV?

5. Did the trial court err in denying appellant's motion for a new trial?

### ANALYSIS

1. Appellant argues that the trial court improperly applied the law by allowing testimony on certain OSHA and Minnesota OSHA regulations and by instructing the jury that it was to consider any violations as evidence in deciding the issue of negligence. The parties, perceiving the dispute as being whether an employer must take responsibility for an OSHA violation when the injured worker is not an employee of the violator, cited to this court many OSHA cases dealing with the responsibility of a general contractor for an injury where one of its subcontractors has violated an OSHA regulation. For example, we are cited to a 1975 Second Circuit opinion regarding a multi-employer construction site in which the court said:

> "[T]o draw * * * a general rule that standards under the Act can be violated only when a cited employer's own employees are shown to be directly exposed to a violation of a standard seems to us to be wholly unwarranted. It also fails to give effect to the clause under which [appellant] was cited, subparagraph (2) of § 654(a). That subparagraph requires employers to "comply with occupational safety and health standards promulgated under the Act."

*Brennan v. Occupational Safety and Health Rev. Comm. (Underhill Constr. Corp.)*, 513 F.2d 1032, 1037 (2d Cir.1975).

In response to this decision by the Second Circuit, the Occupational Safety and Health Administration Commission (OSHAC) changed its position to hold that a general contractor might be jointly liable for OSHA violations by its subcontractors even though the general contractor's own employees were not directly exposed to the risk created. *See Marshall v. Knutson Constr. Co.*, 566 F.2d 596, 599 n. 6 (8th Cir.1977); *Underhill Constr. Corp.*, 513 F.2d at 1038.

On the other hand, we are cited to *Behlke v. Conwed Corp.*, 474 N.W.2d 351, 359 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991), in which this court said:

> [The injured party] must be a member of the class protected under the regulation in order for the OSHA regulation to ap-

537

ply. Here, the protected class is employees [of the OSHA violator].

This was dicta, however, for the issue in *Behlke* was whether an expert should be allowed to give his opinion on whether OSHA regulations had been violated where the court ruled that, "Legal analysis by an expert is 'ordinarily inadmissible.' An OSHA regulation does not establish negligence per se." *Id.* (citation omitted). In *Behlke*, the trial court properly excluded an expert's opinion that OSHA regulations had been violated.

Here, too, the issue in dispute is not whether another company should be liable if Wells violated OSHA, but whether it was error for the trial court to allow testimony and then instruct the jury to the effect that a violator of OSHA might be liable to the employees of another company.

Here testimony on the OSHA standards was properly admitted as evidence of a standard of care for the jury to use in determining the negligence of any or all parties.

■ The trial court in this case said: Wells argues that the OSHA regulations and MOSHA rules were not relevant because James O'Neil was not a Wells employee and because the accident occurred several [w]eeks after Wells had concluded its work on the site and returned control of the site to the other contractors. Wells reads OSHA and MOSHA too narrowly. The primary purpose of OSHA and MOSHA is to protect the safety of all workers on a construction site, not just the workers of the particular contractor violating the OSHA regulations.

The trial court did not err in its interpretation of the law and its admission of the testimony.

■ 2. The O'Neils, on notice of review, argue that the trial court erred in reducing Janis O'Neil's award for loss of consortium by five percent because of the negligence the jury attributed to her husband.

In 1969, the supreme court established that the spouse of an injured person has a derivative right of action for loss of consor-

tium. *Thill v. Modern Erecting Co.*, 284 Minn. 508, 513, 170 N.W.2d 865, 869 (1969).

The comparative fault statute states, in part, that:

[A]ny damages allowed shall be diminished in proportion to the amount of fault attributable to the person recovering.

Minn.Stat. § 604.01, subd. 1 (1990). Because a negligence action for loss of consortium is a derivative action, the fault of the injured party is "attributable to" the person recovering and must reduce the award of the spouse.

A contrary result was reached in *Paulson v. Lapa, Inc.*, 450 N.W.2d 374 (Minn. App.1990), *pet. for rev. denied* (Minn. Mar. 22, 1990), which was cited to the court. *Paulson* was a dram shop case, not a derivative action, and this court emphasized that in a dram shop action,

the dependent's claim is not based on any action that [the intoxicated spouse] would have had against the [liquor] vendor had he survived.

*Id.* at 383.

This is not a dram shop case; O'Neil's negligence was by imputation "attributable" to his wife.

■ 3. Appellant argues that the trial court erred in refusing to give an instruction on the issue of superseding cause. The following elements are necessary for superseding cause:

1. The intervening cause must come between the original cause and the injury in point of time.

2. The intervening cause must not have been brought about by the original negligence.

3. The intervening cause must turn aside the natural sequence of events and produce a result which would not otherwise have followed from the original negligence.

4. The intervening cause must not have been reasonably foreseeable by the original wrongdoer.

JIG III, 142.

The basis of appellant's challenge is that a Wells employee, deceased at the time of

trial, had taken pictures of the Wells work shortly after Wells left the site. In the pictures, no covering was visible over the hole. Thus, appellant argues, someone else must have improperly covered the hole and their negligence superseded any negligence by Wells.

OSHA regulations and industry practice require that a dangerous hole be provided with a firmly affixed cover. The regulations would be violated equally by an uncovered hole or by a hole covered by a loose piece of plywood. Wells admittedly would have left the hole open or improperly covered, based on its usual practice. Any improper remedial actions that another person may have taken could have been foreseen and would not amount to a superseding cause.

The trial court did not err in refusing to give an instruction on superseding cause.

 4. Appellant challenges the trial court's denial of judgment notwithstanding the jury verdict (JNOV).

> A motion for judgment *non obstante* accepts the view of the evidence most favorable to the verdict * * * and if * * *, in the light of the evidence as a whole, [the record] discloses a reasonable basis for the verdict, the motion must be denied.

*Cofran v. Swanman*, 225 Minn. 40, 42, 29 N.W.2d 448, 450 (1947).

There was a reasonable basis for the verdict and the trial court did not err in denying a motion for JNOV.

 5. Appellant also challenges the trial court's denial of a new trial based on Minn.R.Civ.P. 59.01(e) which allows the grant of a new trial if there are "[e]xcessive or insufficient damages, appearing to have been given under the influence of passion or prejudice." The general rule is that:

> To warrant overturning a verdict on appeal, the damages must so greatly exceed adequate compensation as to be accounted for on no other basis than that of passion or prejudice. * * * The trial court * * * will not be reversed * * * in

the absence of a clear abuse of discretion.

*Gilbertson v. Gross*, 232 Minn. 373, 375, 45 N.W.2d 547, 548 (1951) (citations omitted).

In denying appellant's post-trial motions, the trial court stated that:

> Although the parties stipulated that the actual medical expenses were $65,977.62, they also stipulated to past rehabilitation and retraining expenses in the amount of $12,047.21. There was evidence that James O'Neil made 230 round trips of 86 miles each from March 14, 198[8] to December 8, 1989 to attend school, and additional trips for that purpose between December 8, 1989 and the time of trial. The Special Verdict Form did not provide a separate line for rehabilitation and retraining expenses. The inclusion of these damages in the award for medical expenses could account for the $85,000 awarded.

This is a rational explanation for the award of medical expenses.

 Also, while the damages for loss of consortium may have been awarded in an excessive amount, the trial court reduced them by more than 40 percent. The trial court did not abuse its discretion in not granting further relief.

## DECISION

The trial court did not err in allowing testimony and in instructing the jury regarding OSHA requirements as evidence of negligence and in denying a request for a jury instruction on superseding cause and motions for JNOV and a new trial. Further, loss of consortium in this situation is a derivative action, so the fault of the injured party is attributable to the spouse. The trial court did not err in reducing the award for consortium by the percentage of the injured party's fault.

Affirmed.